PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
12/08/98
THOMAS K. KAHN
CLERK

_____

No. 95-8330

_____

D. C. Docket No. 1:93-cv-913-RLV

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

408 PEYTON ROAD, S.W., Atlanta,
Fulton County, Georgia, including
all buildings and appurtenances
thereon, described in Exhibit A
attached,

Defendant-Appellant,

ROBERT RICHARDSON,

Claimant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(December 8, 1998)**

Before HATCHETT, Chief Judge, TJOFLAT, ANDERSON, EDMONDSON, COX,
BIRCH, DUBINA, BLACK, CARNES, BARKETT, HULL and MARCUS,
Circuit Judges.

BLACK, Circuit Judge:

At issue in the present appeal is whether predeprivation notice and a hearing must be provided when the Government executes a seizure warrant against real property, but chooses not to assert physical control. We hold that the Due Process Clause of the Fifth Amendment mandates provision of such predeprivation procedures even when the seizure of real property is not physically intrusive. We further hold that in a case such as this one, when the Government has failed to provide predeprivation notice and a hearing but the property is found to be subject to forfeiture after the process due has been afforded, the proper remedy is as follows: The Government should return any rents received or other proceeds realized from the property during the period of illegal seizure.

## I. BACKGROUND

On April 14, 1993, the Government secured an ex parte warrant authorizing the seizure of 408 Peyton Road,

S.W.,[1] property in which Appellant Robert Richardson held an interest. The warrant application maintained that Appellant Richardson had financed the acquisition and development of the defendant property through drug-trafficking activities. In support of these contentions, it was stated that Richardson's reported income was insufficient to sustain his real estate acquisition and development activities and that Richardson had engaged in a series of suspect financial transactions relative to the property. The evidence persuaded a United States Magistrate Judge that probable cause existed to believe the property was involved in or traceable to money laundering proscribed by 18 U.S.C. § 1956. The seizure warrant was executed by posting it on the property. No other action was taken pursuant to the warrant.

---

[1] This action originally involved two properties — the 408 Peyton Road, S.W., property and the 451 Hope Court, S.W., property. By stipulation entered into on October 21, 1994, the property known as 451 Hope Court, S.W., was dismissed as a defendant in the forfeiture case.

On April 28, 1993, the Government instituted this civil forfeiture proceeding against the defendant property pursuant to 18 U.S.C. § 981. Upon the filing of the verified complaint, the Clerk of Court issued a warrant directing the United States Marshal "to arrest and take into custody" the defendant property. On the same date, the Government filed a notice of lis pendens in the real property records of the Superior Court of Fulton County, Georgia.[2] On June 3, 1993, a Deputy United States Marshal executed the federal arrest warrant by posting a copy at the defendant property. As the dwelling on the property was occupied, the Government elected not to assert immediate physical control over the premises. The record establishes that the Government neither posted warning signs on the property nor changed the locks.

On July 2, 1993, Appellant Richardson claimed an ownership interest in the defendant property. On May 5,

---

[2] The purpose of a lis pendens is to notify prospective purchasers and encumbrancers that any interest acquired by them in property is subject to the decision of the court in pending litigation. Ga. Code Ann. § 44-2-143.

1994, Appellant Richardson filed a motion to dismiss, arguing that the Government's failure to provide preseizure notice and a hearing deprived him of property without due process, in violation of the Fifth Amendment. In an order issued on July 11, 1994, the district court rejected Richardson's due process claim. Meanwhile, the Government had filed a motion for summary judgment of forfeiture. By order dated February 10, 1995, the district court granted the Government's motion for summary judgment and ordered the defendant property forfeited to the United States. Appellant Richardson filed a timely notice of appeal.

On May 15, 1997, a panel of this Court concluded that the Government violated Richardson's due process rights and reversed the district court's order granting summary judgment. Based on Circuit precedent, the panel remanded with instructions to dismiss the complaint without prejudice. On January 23, 1998, this

Court sua sponte vacated the panel opinion to reconsider en banc the appropriate remedy for such a due process violation. Following oral argument, the Court asked for supplemental briefing on whether the execution of an arrest warrant for real property without prior notice and the opportunity to be heard violates the Fifth Amendment due process clause when the Government refrains from taking physical possession or otherwise exercising dominion and control over the property.

## II. DISCUSSION

### A. Due Process Requirements Applicable to the Seizure of Real Property

In *United States v. James Daniel Good Real Property*, 510 U.S. 43, 114 S. Ct. 492 (1993), the Supreme Court addressed whether the Fifth Amendment Due Process Clause prohibits the Government in a civil forfeiture case from seizing real property without first affording the owner notice and an opportunity to be heard. In *Good*, the Government filed an in rem action seeking forfeiture

under 21 U.S.C. § 881(a)(7). *Id.* at 47, 114 S. Ct. at 497.

The district court clerk then issued an arrest warrant commanding the United States Marshal "to arrest and attach the said property and to detain the same in your custody."[3] Ten days later, in an ex parte proceeding, a United States Magistrate Judge issued a seizure warrant commanding the marshal "to seize the property specified, servicing this warrant and make the seizure and leave a copy of this warrant."[4] At the time the marshal executed the seizure warrant, Good was leasing the property to tenants. *Id.* at 47, 114 S. Ct. at 498. The Government allowed the tenants to remain on the property subject to an occupancy agreement that directed payments to the United States Marshal. *Id.*

---

[3] As part of the supplemental briefing, this Court asked the Government to supply the Court with a copy of the August 8, 1989 arrest warrant at issue in *Good*. The arrest warrant in this case is substantively the same as the one in *Good*.

[4] In supplemental briefing, the Government also supplied the Court with a copy of the August 18, 1989, seizure warrant issued in *Good*. The seizure warrant in this case is substantively the same as the one in *Good*.

In concluding that the Government violated Good's Fifth Amendment due process rights, the Supreme Court noted that, as a general matter, the Government must provide notice and a hearing prior to depriving an individual of property. *Id.* at 48, 114 S. Ct. at 498. The Constitution tolerates exceptions to that general rule only in those "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Id.* at 53, 114 S. Ct. at 501 (internal quotations and citations omitted). The Supreme Court identified the three-part inquiry set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893 (1976), as the appropriate analytical framework for determining whether seizure of real property for purposes of civil forfeiture justifies such an exception. *Good*, 510 U.S. at 53, 114 S. Ct. at 501. The *Mathews* analysis requires consideration of (1) "the private interest affected by the official action," (2) "the risk of an erroneous deprivation of that interest through the procedures used, as well as the

8

probable value of additional safeguards," and (3) "the Government's interest, including the administrative burden that additional procedural requirements would impose." *Id.* at 53, 114 S. Ct. at 501 (citing *Mathews v. Eldridge*, 424 U.S. at 335, 96 S. Ct. at 903).

The "importance of the private interests at risk and the absence of countervailing Government needs" convinced the Supreme Court that, absent exigent circumstances, seizure of real property in a civil forfeiture context is not one of those extraordinary instances that justify an exception to the general rule requiring predeprivation notice and a hearing. *Id.* at 62, 114 S. Ct. 505. First, the Court reaffirmed that the right to maintain control over one's home, and to be free from governmental interference, stands as "a private interest of historic and continuing importance." *Id.* at 53-54, 114 S. Ct. at 501. Second, the Supreme Court determined that ex parte seizure involves an unacceptable risk of error, affording little or no protection to the innocent owner. *Id.*

at 55, 114 S. Ct. at 501-02. Third, the Court found no pressing governmental need to seize real property prior to the forfeiture hearing. *Id.* at 56, 114 S. Ct. at 502. Accordingly, the Supreme Court held that, absent exigent circumstances, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture. *Id.* at 62, 114 S. Ct. at 505.

In *United States v. 2751 Peyton Woods Trail, S.W.*, 66 F.3d 1164 (11th Cir. 1995), the Eleventh Circuit had occasion to apply *Good* in a factual setting similar to that presented by the instant dispute. In that case, the Court addressed whether the Government had deprived William Richardson of due process when it seized his real property without prior notice and a hearing.[5] *2751 Peyton*

---

[5] Although it has no bearing upon disposition of the present controversy, we note that both the present case and *2751 Peyton Woods Trail* involve properties situated within an eight and one-half acre tract of land known as the Hope Court subdivision. As Robert Richardson developed Hope Court, William Richardson presumably acquired his interest in the 2751 Peyton Woods Trail, S.W., property from him. The facts do not disclose what relation Robert and William Richardson share beyond their common last name.

*Woods Trail*, 66 F.3d at 1165. As in the present case, in *2751 Peyton Woods Trail*, the Government secured ex parte seizure warrants by convincing a magistrate judge that probable cause existed to believe the real properties were involved in or traceable to money laundering. *Id.* at 1165. After the Government filed its forfeiture complaint, it received warrants for arrest of the properties in rem. *Id.* "The Government then executed process on the properties and changed the locks on an uninhabited home situated on the one developed property." *Id.* Based upon our interpretation of *Good*, the Court held "that the lack of notice and a hearing prior to issuance of the warrants seizing the properties rendered the warrants 'invalid and unconstitutional.'" *2751 Peyton Woods Trail*, 66 F.3d at 1167.

B.    The Due Process Analysis in this Case

Our resolution of this case turns in large part on the fact that it is virtually identical to *Good* in that the

11

Government here, as in *Good*, obtained and executed both an arrest warrant and a seizure warrant.[6]

To better understand the framework of the forfeiture process, we note that one distinction between an arrest warrant and a seizure warrant is the method by which the Government obtains the warrants. The statutory forfeiture provision relied upon by the Government in this case provides for three methods of seizing property:

> Property shall be seized under paragraph (1) of this subsection upon process issued pursuant to the Supplemental Rules for [C]ertain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property, except that seizure without such process may be made when—
>
> (A) the seizure is pursuant to a lawful arrest or search; or

---

[6] We do recognize that this case is somewhat different from *Good* because in *Good*, the Government entered into an occupancy agreement with the lessees of the property, under which the lessees paid rents to the United States Marshal. 510 U.S. at 47, 114 S. Ct. at 498. No such occupancy agreement was involved in this case. However, the 408 Peyton Road, S.W., property was Richardson's marital residence. The Court does not and cannot know whether the Government would have entered into an occupancy agreement similar to the one in *Good* had 408 Peyton Road, S.W., been a rental property.

(B) the Attorney General, the Secretary of the Treasury, or the Postal Service, as the case may be, has obtained a warrant for such seizure pursuant to the Federal Rules of Criminal Procedure, in which event proceedings under subsection (d) of this section shall be instituted promptly.

18 U.S.C. § 981(b)(2). The statutory forfeiture provision relied upon by the Government in *Good* similarly provides for multiple methods of seizing property:

Any property subject to civil forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property, except that seizure without such process may be made when—

(1) the seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;

(2) the property subject to seizure has been the subject of a prior judgment in favor of the United States in a criminal injunction or forfeiture proceeding under this subchapter;

(3) the Attorney General has probable cause to believe that the

property is directly or indirectly dangerous to health or safety; or

(4) the Attorney General has probable cause to believe that the property is subject to civil forfeiture under this subchapter.

In the event of seizure pursuant to paragraph (3) or (4) of this subsection, proceedings under subsection (d) of this section shall be instituted promptly.

The government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure.

21 U.S.C. § 881(b). These statutes make clear that to obtain the arrest warrants in this case and in *Good*, the Government simply had to file a verified forfeiture complaint — upon the Government's filing of the verified complaint, the clerk of court issued a warrant for the arrest of the property. *See* Rule C(3), Supplemental Rules for Certain Admiralty and Maritime Claims. To obtain the seizure warrants, on the other hand, the Government had to make ex parte showings of probable

14

cause before a magistrate judge. *See* Fed. R. Crim. P. 41(c).

Although courts and commentators, as well as the forfeiture statutes relied upon by the Government here and in *Good*, sometimes seem to blur the distinction between arrest warrants and seizure warrants in terms of their effects,[7] some of the language used by the Supreme Court in *Good* could be read to indicate that the execution

---

[7] *See* 18 U.S.C. § 981 (referring to both arrest and seizure warrants as methods for "seizing" property); 21 U.S.C. § 881 (same); *United States v. Three Tracts of Property Located on Beaver Creek*, 994 F.2d 287, 289 (6th Cir. 1993) (stating in recitation of facts that the district court found probable cause to believe the property was subject to forfeiture and that "[a] warrant of arrest was issued ordering the U.S. Marshal to seize the property and currency"); *Schrob v. Catterson*, 948 F.2d 1402, 1415 n. 13 (3d Cir. 1991) ("As authorized by 21 U.S.C.A. § 881(b), the prosecutor can either seek a seizure warrant under Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims, or under Federal Rule of Criminal Procedure 41."); *United States v. One Parcel of Property Located at 15 Black Ledge Drive*, 897 F.2d 97, 98 (2d Cir. 1990) (stating in recitation of facts that "pursuant to an in rem warrant for arrest of property issued by the district court, the property was seized by the United States Marshal"); Brad A. Chapman & Kenneth W. Pearson, Comment, *The Drug War and Real Estate Forfeiture Under 21 U.S.C. § 881: The "Innocent" Lienholder's Rights*, 21 Tex. Tech. L. Rev. 2127, 2148 (1990) (discussing obtaining "an in rem arrest warrant for the seizure of the real property"); Theodore P. Sherris, *Drug Related Forfeitures: Land Title Issues*, Prob. & Prop., Jan.-Feb. 1990 at 33, 34 (stating that "[s]imultaneously with the filing of the verified complaint, an in rem seizure ("arrest") warrant is issued").

of an arrest warrant does not implicate the same due process concerns as does the execution of a seizure warrant. Specifically, in rejecting the argument that seizure is required to obtain jurisdiction over the res, the Supreme Court cited with approval the simple posting of an arrest warrant issued under the Supplemental Rules for Certain Admiralty and Maritime Claims to bring the property within the reach of the courts. *Good*, 510 U.S. at 58, 114 S. Ct. at 505.[8] Nevertheless, we need not definitively resolve here the issue of whether the execution of an arrest warrant implicates the same due process concerns as does the execution of a seizure warrant because in this case, as in *Good*, the Government

---

[8] On this point, the Court cited *United States v. TWP 17 R 4, Certain Real Property in Maine*, 970 F.2d 984 (1st Cir. 1992), in which the First Circuit held that the execution of an arrest warrant by posting did not violate the Fifth Amendment Due Process Clause. Although the arrest warrant in *TWP 17 R 4* directed the United States Marshal to "arrest the property . . . and detain the same in your custody until further order of the Court," it did not direct the United States Marshal to actually seize the property and the United States Marshal did not do so. *Id.* at 986.

obtained and executed both an arrest warrant and a seizure warrant.[9]

1.  Due Process Implications of a Nonphysical Seizure of Real Property.

The Government argues that preseizure notice and a hearing was not required in this case because it did not intend to, and did not in fact, exercise actual physical control over the property. The Government asks the Court to create an exception to *Good* where the Government in fact obtains and executes an arrest warrant and a seizure warrant authorizing it to exert physical control and dominion over the property, but then of its own will chooses not to exercise such authority.

The Supreme Court in *Good* never explicitly defined the term "seizure," but the Government suggests we should infer assertion of physical control is an essential element of a seizure because the facts of *Good* involved

_____

[9] We further note, without deciding, that the title of the warrant may not be as determinative of whether there has been a due process violation as may be the extent of the authority that the warrant purports to grant.

17

some level of physical intrusion. The Supreme Court never indicated, however, that the Government's choice to exercise physical control over the defendant real property should be regarded as the sine qua non of a constitutionally cognizable seizure. Moreover, in other contexts, the Supreme Court has employed the term seizure more broadly to refer to governmental action that more generally deprives a property owner of significant property interests. *See United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656 (1984) (stating in the Fourth Amendment context that "[a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property" (footnote omitted)).

Although the Government in this case chose not to exert physical control over the property, the Court still must assess whether the magnitude of the private interests at stake require predeprivation notice and a hearing. As the Supreme Court instructed in *Good*, we

must evaluate the due process implications of the challenged deprivation under the three-fold test enunciated in *Mathews v. Eldridge*. We must determine whether some lesser procedural protection than that required in *Good* will suffice for deprivations occasioned by nonphysical seizures of real property. If lesser procedural protections fail to satisfy due process, then even nonphysical seizures of real property will require predeprivation notice and a hearing.

2. *Mathews v. Eldridge* Analysis.

a. The Private Interest Affected by a Nonphysical Seizure.

The first *Mathews* factor requires consideration of the private interest that will be affected by the challenged official action. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976). The United States essentially argues that the private interest at stake in the present seizure is not commensurate with the interests at stake in *Good* and *2751 Peyton Woods Trail* because the present case does not

involve the Government's exertion of physical dominion and control over the property.

This argument misapprehends the import of the Supreme Court's decision in *Good* and our decision in *2751 Peyton Woods Trail.* Neither case supports the proposition that the protections of the Due Process Clause are confined to physically-invasive seizures. Aside from the potential for physical intrusion, the seizure of a home gives the Government "the right to prohibit sale . . . to evict occupants, to modify the property, to condition occupancy, to receive rents, and to supersede the owner in all rights pertaining to the use, possession, and enjoyment of the property." *Good*, 510 U.S. at 54, 114 S. Ct. at 501. As a consequence, even when the Government chooses not to exert its rights under a seizure warrant, it still impairs the historically significant "right to maintain control over [one's] home, and to be free from governmental interference." *Id.* at 53, 114 S. Ct. 501. Although the Government allowed Richardson to

maintain possession of his home, *Good* forecloses the argument that the execution of the seizure warrant on 408 Peyton Road did not affect any constitutionally significant interests.

Also instructive is the Supreme Court's reliance in *Good* on *Connecticut v. Doehr*, 501 U.S. 1, 111 S. Ct. 2105 (1991). In *Doehr*, the Supreme Court struck down a state statute that authorized prejudgment attachment of real estate without prior notice or hearing, even in the absence of extraordinary circumstances. 501 U.S. at 4, 111 S. Ct. at 2109. The Court found the statute failed to satisfy the Due Process Clause. *Id.* at 18, 111 S. Ct. at 2116. The Supreme Court explicitly rejected the notion that only "complete, physical, or permanent deprivation[s] of real property" trigger due process scrutiny and stated that its "cases show that even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection." *Id.* at 12, 111 S. Ct. at 2113.

Reliance on *Doehr* reveals that the Supreme Court in *Good* did not intend for physical control to be of paramount importance when determining whether a constitutionally cognizable "seizure" of real property has taken place.

Nor has this Circuit suggested that Due Process Clause protection is withheld where seizures are not physically intrusive. The *2751 Peyton Woods Trail* opinion noted that the Government had changed the locks on an uninhabited home situated on the one developed property, 66 F.3d at 1165, but never intimated that the decision was premised upon so narrow a foundation. To the contrary, the decision affirmatively establishes that the Court could not have placed dispositive importance upon that factor inasmuch as the Government changed the locks on only one of the defendant properties, but the Court reversed the forfeiture judgments as to both properties. The Court stated that "lack of notice and a hearing prior to issuance of the warrants seizing the properties rendered the warrants 'invalid and

unconstitutional.'" 66 F.3d at 1167. The *2751 Peyton Woods Trail* decision therefore supports our holding that a constitutionally cognizable seizure of real property need not involve physical intrusion.

    b.    <u>The Risk of an Erroneous Deprivation</u>.

The second *Mathews* factor directs judicial attention to the risk that the procedures employed may result in an erroneous deprivation of the private interest and the probable value, if any, of additional or substitute procedural safeguards. 424 U.S. at 335, 96 S. Ct. at 903. As the Supreme Court recognized in *Good*, the practice of ex parte seizure creates an unacceptable risk of error. *Good*, 510 U.S. at 55, 114 S. Ct. at 501. The ex parte preseizure proceeding offers little or no protection for innocent owners. *Id.*, 114 S. Ct. at 502. Although Congress clearly intended to protect innocent owners from the expansive grasp of the forfeiture statutes, *see* 18 U.S.C. § 981(a)(2) ("No property shall be forfeited under this section to the extent of the interest of an owner or

23

lienholder by reason of any act or omission established by that owner or lienholder to have been committed without the knowledge of that owner or lienholder."), the Government need not offer any evidence on the question of innocent ownership in the ex parte preseizure hearing. *Good*, 510 U.S. at 55, 114 S. Ct. at 502. In any event, ex parte presentation of such evidence would not suffice to protect the innocent owner's interests because "fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights." *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 170, 71 S. Ct. 624, 647-48 (1951) (Frankfurter, J., concurring). As Justice Frankfurter observed, "[n]o better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it." *Id.* at 171-72, 71 S. Ct. at 649.

c.    The Governmental Interest in Ex Parte Seizures.

The third *Mathews* factor concerns "the Government's interest, including the function involved and the fiscal and administrative burdens that [] additional or substitute procedural requirement[s] would entail."  424 U.S. at 335, 96 S. Ct. at 903.   The governmental interest implicated by the present controversy is not some generalized interest in forfeiting property, but the specific interest in conducting nonphysical seizures of real property prior to a hearing.  *Good*, 510 U.S. at 56, 114 S. Ct. at 502.  The Court must determine whether, in the civil forfeiture context, such seizures are justified by a pressing need for prompt action.  *Id.*

In *Good*, the Supreme Court concluded that there generally is no pressing need for prompt governmental action justifying ex parte seizure of real property in the civil forfeiture context.  *Id.*  In contrast to the situation with personal property, the Supreme Court held that

jurisdiction over real property does not depend upon prior seizure. *Id.* at 57, 114 S. Ct. at 503 (noting that "[b]ecause real property cannot abscond, the court's jurisdiction can be preserved without prior seizure"). When pursuing the forfeiture of real property, "the res may be brought within the reach of the court simply by posting notice on the property and leaving a copy of the process with the occupant." 510 U.S. at 58, 114 S. Ct. at 503.

Nor does forfeiture of real property involve the risk that the res will disappear if the Government is required to provide advance warning of the forfeiture action. *Id.* at 57, 114 S. Ct. at 502-03. As a consequence, in the typical case, the Government may secure its legitimate interest without seizing the subject property. "Sale of the property can be prevented by filing a notice of *lis pendens* as authorized by state law when the forfeiture proceedings commence." *Id.* at 58, 114 S. Ct. at 503 (citations omitted). If an owner is likely to destroy his property when advised of the forfeiture action, "the Government

26

may obtain an *ex parte* restraining order, or other appropriate relief, upon a proper showing in district court." *Id.* at 58-59, 114 S. Ct. at 503 (citing Fed. R. Civ. P. 65; *United States v. Premises and Real Property at 4492 South Livonia Rd.,* 889 F.2d 1258, 1265 (2d Cir. 1989)). "Finally, the Government can forestall further illegal activity with search and arrest warrants obtained in the ordinary course." *Good,* 510 U.S. at 59, 114 S. Ct. at 504.

Based on the foregoing, we hold that the procedures employed by the Government in the present case do not comport with the Due Process Clause of the Fifth Amendment unless the existence of exigent circumstances justified the ex parte seizure. *See id.* at 62, 114 S. Ct. at 505.

3.    The Existence of Exigent Circumstances.

In order to establish the existence of exigent circumstances, the Government must demonstrate that means less restrictive than an ex parte seizure — such as the filing of a lis pendens, restraining order, or bond —

would not adequately protect the Government's interests in preventing the sale, destruction, or continued unlawful use of the real property. *Id.* at 62, 114 S. Ct. at 505. In the present case, the Government has not alleged or established the existence of any exigent circumstances that would justify the ex parte seizure of Appellant Richardson's real property. As explained previously, the Government can protect its legitimate interests by filing a notice of lis pendens or taking other steps short of seizure. The Government therefore deprived Richardson of due process when it seized 408 Peyton Road, notwithstanding its decision not to assert physical control over the property.

C.  <u>Remedy for Due Process Violation</u>

Having concluded that the Government violated Richardson's rights under the Fifth Amendment Due Process Clause, we must now determine the remedy for such a violation. In *2751 Peyton Woods Trail*, a panel of this Court held that dismissal of the complaint is the

28

appropriate remedy when the Government improperly seizes property without predeprivation notice and a hearing. 66 F.3d at 1167. Upon further consideration, we now conclude that when the Government fails to provide predeprivation notice and a hearing, but the property is found to be subject to forfeiture after the process due has been afforded, the proper remedy for a seizure in violation of the Fifth Amendment Due Process Clause is the return of any rents received or other proceeds realized from the property during the period of illegal seizure.[10] We need not define here the contours of the remedy because the property seized in this case was Richardson's marital residence and there was no loss of

---

[10] We note that our conclusion is consistent with the view of a majority of the other circuits that have considered this issue. *See United States v. Marsh*, 105 F.3d 927, 931 (4th Cir. 1997); *United States v. All Assets and Equip. of West Side Bldg. Corp.*, 58 F.3d 1181, 1193 (7th Cir. 1995); *see also United States v. Real Property Located at 20832 Big Rock Drive*, 51 F.3d 1402, 1406 (9th Cir. 1995) (proper remedy is "exclusion of the illegally seized evidence at trial" and the "Government is held responsible for any rents accrued during the illegal seizure" (internal quotations and citation omitted)); *United States v. 51 Pieces of Real Property*, 17 F.3d 1306, 1316 (10th Cir. 1994) (proper remedy is that the "impermissibly obtained evidence [may] not [be] used in the forfeiture proceeding" and the Government must return "rents that accrued during the illegal seizure" (internal quotations and citations omitted)); *but see United States v. One Parcel of Real Property Located at 9638 Chicago Heights*, 27 F.3d 327, 330 (8th Cir. 1994) (holding dismissal of the complaint to be the proper remedy).

29

rents. As there is no evidence to be suppressed in this case, we need not address whether suppression of evidence is an appropriate remedy for the Fifth Amendment due process violation.

## III. CONCLUSION

We hold that the Government's seizure of 408 Peyton Road without prior notice and a hearing violated Richardson's Fifth Amendment due process rights. Nevertheless, Richardson was not deprived of any rents received or other proceeds realized from the property during the period of illegal seizure, and as there has now been a hearing and determination on the merits, the district court's judgment in favor of the Government should remain intact.

AFFIRMED.

BIRCH, Circuit Judge, concurring in part and dissenting in part in which BARKETT, Circuit Judge, joins:

I concur in most of that said in the majority opinion; most particularly with the following:

- the Due Process Clause of the Fifth Amendment mandates predeprivation notice and a hearing when the Government executes a seizure warrant against real property, even when such seizure is not physically intrusive;

- the right to maintain control over one's home, and to be free from governmental interference, stands as a private interest of historic and continuing importance;

- even when the Government chooses not to exert its rights under a seizure warrant, it still impairs the owner's historically significant right to maintain control over one's home, free of governmental interference;

- the practice of ex parte seizure creates an unacceptable risk of error;

- the ex parte preseizure proceeding advocated by the Government offers little or no protection for innocent owners because fairness can rarely be obtained by secret, one-sided determination of facts determinative of rights; and,

- advance notice by the Government will not risk disappearance of the res.

I respectfully dissent from the majority's formulation of a "remedy" for such conduct by the Government. The return of rents, if any, generated by the property during the period of illegal seizure to the rightful owner is a sorry sanction that denigrates the fundamental right declared to be infringed and deemed worthy of protection. The deterrent effect of this phantom penalty is as ephemeral as is the Government's ability to restrain overzealous prosecutors. Anti-drug law enforcement

31

is necessary, but constitutional rights, including those required by due process, can never be sacrificed for the mere convenience of law enforcement.