20-1212 (L)
*In Re: 650 Fifth Avenue Company & Related Properties*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2020

(Argued:  October 5, 2020 and February 2, 2021
Decided: March 9, 2021)

Docket No. 20-1212(L), 20-1265(XAP)

———————————————

IN RE:  650 FIFTH AVENUE COMPANY AND RELATED PROPERTIES

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————————

Before:

PARKER AND CHIN, *Circuit Judges*, and RESTANI, *Judge*.[1]

———————————————

Cross-appeals from orders of the United States District Court for the

Southern District of New York (Preska, *J.*) (1) determining that the Government

had probable cause to forfeit real property located at 650 Fifth Avenue in

Manhattan and (2) granting the motion of Claimants-Appellants Alavi

---

[1]     Judge Jane A. Restani, of the United States Court of International Trade, sitting
by designation.

Foundation and 650 Fifth Avenue Company to modify a protective order by releasing to them a portion of the rental income generated from the building.

AFFIRMED AS MODIFIED.

———————

DANIEL S. RUZUMNA (Melissa Ginsberg, Diana M. Conner, *on the brief*), Patterson Belknap Webb & Tyler LLP, New York, New York, and
JOHN GLEESON (Winston Paes, *on the brief*), Debevoise & Plimpton LLP, New York, New York, *for Claimants-Appellants-Cross-Appellees.*

DANIEL M. TRACER, Assistant United States Attorney (Michael D. Lockard, Martin S. Bell, Samuel L. Raymond, Thomas McKay, Assistant United States Attorneys, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, New York, *for Plaintiff-Appellee-Cross-Appellant*.

PATRICK N. PETROCELLI, Stroock & Stroock & Lavan LLP, New York, New York (James L. Bernard, Curtis C. Mechling, Pamela S. Takefman, Stroock & Stroock & Lavan LLP, New York, New York; Timothy B. Fleming, Wiggins Childs Pantazis Fisher Goldfarb PLLC, Washington, D.C.; Dale K. Cathell, Richard M. Kremen, DLA Piper LLP (US), Baltimore, Maryland; Liviu Vogel, Salon Marrow Dyckman Newman & Broudy, LLC, New York, New York; Peter R. Kolker, Zuckerman Spaeder, LLP, Washington, D.C., *on the brief*), *for the Acosta, Beer, Greenbaum,*

2

*Kirschenbaum, Havlish, Heiser, Peterson, Miller, and Rubin Claimants-Appellees.*

RALPH P. DUPONT, Dupont Law Firm, Stamford, Connecticut, *for Hegna Claimants-Appellees.*

---

PER CURIAM:

In this case, the Government seeks the forfeiture of 650 Fifth Avenue, a building in midtown Manhattan (the "Building"), as well as other assets owned by Claimants-Appellants-Cross-Appellees Alavi Foundation and 650 Fifth Avenue Company (together, "Claimants"). The case, which has been pending since 2008, has a long and tortured history. *See In re 650 Fifth Ave. & Related Props.*, 934 F.3d 147, 154-56 (2d Cir. 2019); *In re 650 Fifth Ave. & Related Props.*, 830 F.3d 66, 82-86 (2d Cir. 2016). On October 7, 2020, we remanded the case to the district court to permit it to conduct a hearing to determine whether there was probable cause for the forfeiture. The district court held the hearing on October 13, 2020, and it concluded that the Government had shown probable cause. The district court had previously ordered the Government to release to

3

Claimants rental income generated from the Building from December 12, 2019, until the court made a probable cause determination.

The parties cross-appeal. Claimants argue that the district court erred in (1) finding probable cause and (2), even assuming the existence of probable cause, ordering the release of rental income only from December 12, 2019, arguing for the release of rental income dating back to January 5, 2018. The Government argues that the district court erred in releasing any rental income.

For the reasons set forth below, we affirm the district court's finding of probable cause, but we modify the district court's order releasing the rental income to cover rental income generated from January 5, 2018, until October 13, 2020.

## I. The Probable Cause Determination

"[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 245 n.13 (1983). "[W]e review for clear error the factual findings that underpin a district court's assessment of probable cause, but we review *de novo* whether a set of facts satisfies the probable cause standard." *United States v. Rajaratnam*, 719 F.3d 139, 153 (2d Cir. 2013) (internal quotation marks omitted).

4

Claimants argue that we should vacate the probable cause determination because the district court (1) relied on tainted evidence to find probable cause and (2) refused to consider Claimants' statute of limitations defense. We are not persuaded and affirm substantially for the reasons set forth by the district court in its October 13, 2020 decision.

First, the district court described at length the non-tainted evidence on which it relied to find probable cause.[2] Second, the district court did not refuse to consider Claimants' statute-of-limitations defense. Nor did it commit reversible error by concluding that, at this stage, Claimants' statute of limitations defense did not defeat a probable cause finding.[3] Finally, we find no abuse of discretion where the district court declined to draw an adverse inference against the Government for failing to produce statute-of-limitations discovery following our 2016 and 2019 opinions requiring it to do so. While the Government's lack of compliance with our previous discovery orders -- that is, providing statute-of-limitations-related discovery and providing a chart of how each particular piece

---

[2]     Because we find that the district court did not rely on tainted evidence, we need not decide whether the Government can rely on inadmissible evidence to establish probable cause for forfeiture.

[3]     As the district court noted, the Claimants can raise the statute of limitations defense once discovery on that issue is complete. Nothing in this opinion reflects our views on the merits of Claimants' statute of limitations defense.

of evidence that Claimants challenge would have inevitably been discovered, *In re 650 Fifth Ave.*, 934 F.3d at 173-74 -- is deeply concerning, the district court's decision to not draw an adverse inference at the probable cause stage was within its "broad discretion" in managing the litigation and determining whether sanctions are appropriate, *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

## II.     The Release of Rental Income

On February 13, 2020, the district court issued an order instructing the Government to release the Building's rental income generated from December 12, 2019 (when our previous mandate issued), until the date of an eventual determination on probable cause for forfeiture (which, as noted, turned out to be on October 13, 2020).  On March 2, 2020, the district court issued an opinion explaining its reasons for the February 2020 order -- that the Government unlawfully seized the Building by withholding from Claimants the rental income generated by it.

On appeal, the parties dispute (1) whether the Building was "seized," (2) if so, whether that seizure violated due process, and (3) if the seizure violated

due process, whether the appropriate remedy is disbursement of the rental income accrued during the period of unlawful seizure.[4]

"We review a district court's legal conclusions regarding forfeiture *de novo* and its factual determinations for clear error." *United States v. Daugerdas*, 892 F.3d 545, 552 (2d Cir. 2018).

A.      Whether the Building Was Seized

*1.      Applicable Law*

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  As to real property, the Supreme Court has ruled that property is "seized" where the government takes from the owner all management rights, including the "right to prohibit sale, . . . the right to evict occupants, to modify the property, to condition occupancy, to receive rents, and

---

4       The Government -- joined by various judgment creditors seeking to satisfy judgments obtained against Iran against Claimants' assets -- argues that we decided these issues already when we remanded the case for the probable cause hearing.  We did not.  We merely remanded to the district court to hold its already scheduled probable cause hearing and ordered that "[t]he restraints on the rental income of [the Building] . . . imposed by the protective order entered by the District Court on December 12, 2019, shall remain in place pending the District Court's probable cause determination."  Dkt. No. 183 at 1-2.  Now that the district court has made its probable cause determination, we reach the merits of these issues.

to supersede the owner in all rights pertaining to the use, possession, and enjoyment of the property," even absent physical possession. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 54 (1993); *see id.* at 59. In other words, "the Government's choice to exercise physical control over the defendant real property should [not] be regarded as the sine qua non of a constitutionally cognizable seizure." *United States v. Land, Winston Cty.*, 163 F.3d 1295, 1298 (11th Cir. 1998) (internal quotation marks omitted); *see United States v. 408 Peyton Rd., S.W.*, 162 F.3d 644, 650 (11th Cir. 1998) ("[T]he Supreme Court in [*James Daniel*] *Good* did not intend for physical control to be of paramount importance when determining whether a constitutionally cognizable 'seizure' of real property has taken place."), *superseded by statute on other grounds*, Civil Asset Forfeiture Reform Act of 2000, Pub. L. 106-185, 114 Stat. 202, *as stated in United States v. Bowman*, 341 F.3d 1228, 1233-35 (11th Cir. 2003); *see also Connecticut v. Doehr*, 501 U.S. 1, 12 (1991) (holding that "complete, physical, or permanent deprivation of real property" is not necessary to trigger due process protections).

### 2. *Application*

The district court did not err in concluding that the Government unlawfully seized the Building. Claimants were deprived of their management

rights, transfer rights, rights to improve the property, rights to negotiate and contract with tenants and third parties, and the right to collect rental income. These are exactly the kinds of meaningful restrictions over real property and interests in the same that rise to the level of a seizure as opposed to a mere restraining order. *See, e.g.*, *James Daniel Good*, 510 U.S. at 54; *408 Peyton Rd.*, 162 F.3d at 650. Accordingly, we affirm the district court's finding that the Building was seized.

B.  Whether Seizure of the Building Violated Due Process

*1.  Applicable Law*

Section 983 of Title 18 of the United States Code sets forth the "[g]eneral rules for civil forfeiture proceedings." 18 U.S.C. § 983. Section 983 permits courts to issue a protective order to "seize, secure, maintain, or preserve the availability of property subject to civil forfeiture," and such orders may be entered prior to judgment. *Id.* § 983(j)(1).

Section 985, however, governs civil forfeiture of "real property and interests in real property" and provides that "real property that is the subject of a civil forfeiture action shall not be seized before entry of an order of forfeiture." *Id.* § 985(b)(1)(A), (f)(1). Section 985 contains two exceptions to this prohibition

9

on pre-judgment seizures of real property: (1) where, on the Government's application, the court conducts a pre-seizure probable cause "hearing in which the property owner has a meaningful opportunity to be heard" or (2) where the court determines "that there is probable cause for the forfeiture and that there are exigent circumstances that permit the Government to seize the property without prior notice and an opportunity for the property owner to be heard." *Id.* § 985(d)(1)(B)(i)-(ii).

Prior to the enactment of § 985, the Supreme Court decided *James Daniel Good*, in which it held that "in the absence of exigent circumstances, the Due Process Clause of the Fifth Amendment prohibits the Government in a civil forfeiture case from seizing real property without first affording the owner notice and an opportunity to be heard." 510 U.S. at 46. Accordingly, both statutory and constitutional due process issues are implicated when real property is subject to civil forfeiture.

2. *Application*

The district court concluded that the building's rental income was an "interest in real property" and thus could not be restrained absent a probable-cause hearing or showing of exigent circumstances. The Government argues that

the district court erred in doing so because the specific provisions in § 985 that require a pre-seizure hearing or showing of exigent circumstances apply only to real property and not to interests in real property, and thus the protective order at issue here is governed by 18 U.S.C. § 983, not § 985. We need not reach that statutory due process question, however, because we conclude that the Government's seizure violated Claimants' constitutionally protected due process rights.

Seizure of real property, including rental income, triggers constitutional procedural safeguards identical to those procedural safeguards provided for in § 985, and thus whether the Government's actions here also trigger § 985 is academic. The Supreme Court in *James Daniel Good* explained that "even if [seizure of rents] were the only deprivation at issue, it would not render the loss insignificant or unworthy of due process protection" and "the private interests at stake" in withholding rental income "weigh heavily in the *Mathews* balance." 510 U.S. at 54-55; *see Doehr*, 501 U.S. at 12 ("[T]he Court has never held that only such extreme deprivations [that is, complete, physical, or permanent deprivation of real property] trigger due process concern."). In other words, the seizure of real property, including the seizure of rental income generated by it,

11

implicates a private interest that triggers constitutional due process protections, regardless of whether the seizure is covered by § 985. The Court in *James Daniel Good* went on to explain that any such seizure must be supported by exigent circumstances or come after the defendant was provided with a meaningful opportunity to be heard. 510 U.S. at 62.

While *James Daniel Good* dealt with 21 U.S.C. § 881, a statute governing forfeiture of real property facilitating drug crimes, not 18 U.S.C. § 985, the Court's reasoning applies equally here. The Court held that "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture," *James Daniel Good*, 510 U.S. at 62, and it did not limit that holding to 21 U.S.C. § 881. Further, our sister circuits have applied *James Daniel Good* in the § 985 context. *See, e.g.*, *Bowman*, 341 F.3d at 1235 (applying *James Daniel Good* to § 985(d) as that section is "essentially a codification of *Good*"); *United States v. Real Prop. Located at 1184 Drycreek Rd.*, 174 F.3d 720, 730-31 (6th Cir. 1999) (applying *James Daniel Good* and affirming district court's finding that "exigent circumstances" warranted an "exception to the pre-seizure notice and hearing requirement").

Therefore, prior to the seizure, the Government was required to provide a pre-deprivation hearing or establish exigent circumstances, neither of which it did. Accordingly, the seizure violated Claimants' constitutionally protected due process rights.

C. The Appropriate Remedy for the Unlawful Seizure

Because we conclude that the Building was unlawfully seized from September 29, 2017, until the district court held its probable cause hearing on October 13, 2020, we must consider what the appropriate remedy is for Claimants, if any. Claimants argue that all unpaid rental income generated during that period -- rent generated from January 5, 2018, until October 13, 2020 -- must be released.[5] The Government argues that the district court's finding of probable cause means that the rental income in question should not be released. Put differently, the Government argues that so long as a court eventually

---

[5] Claimants seek disbursement of rent dating back only until January 5, 2018, because they already received rental income generated between September 29, 2017, and January 5, 2018. Exactly what constitutes rental income generated during this period is not at issue in this appeal.

13

determines that probable cause for forfeiture existed, previously unlawfully seized rental income should not be released. We disagree.

The Government is correct that "an illegal seizure standing alone d[oes] not immunize property from forfeiture." *United States v. Parcel of Prop.*, 337 F.3d 225, 234 (2d Cir. 2003); *see United States v. Cosme*, 796 F.3d 226, 236 (2d Cir. 2015). But, as an overwhelming majority of our sister circuits have held:

> a [*James Daniel*] *Good*-violative seizure does not immunize the property from forfeiture . . . [and] the due process violation is not without remedy. The [overwhelming majority of] circuits . . . have tailored the remedy in a fashion commensurate with the violation of the rights of the claimant: the government must account for the profits or rent which it denied the claimant during the period of illegal seizure.

*United States v. Marsh*, 105 F.3d 927, 931 (4th Cir. 1997); *see Bowman*, 341 F.3d at 1234 ("All but one circuit [to have addressed this issue] have concluded that the remedy for an illegal seizure where the government fails to provide pre-deprivation notice and hearing, but the property is found to be subject to forfeiture after the process due has been afforded is return of rents or lost profits during the period of illegal seizure." (internal quotation marks and alteration omitted)) (collecting cases). Accordingly, we conclude that the return-of-rents

14

remedy is appropriate here, and the rental income generated between January 5, 2018, and October 13, 2020, is to be released to Claimants.

## *CONCLUSION*

For the foregoing reasons, the district court's orders are **AFFIRMED**, except that we modify the district court's order releasing the rental income to cover rental income generated between January 5, 2018, until October 13, 2020.