**UNITED STATES of America, Plaintiff,**

v.

**TWO PARCELS OF REAL PROPERTY LOCATED AT 101 NORTH LIBERTY STREET AND 105 LIBERTY STREET IN CLANTON, CHILTON COUNTY, ALABAMA, WITH ALL APPURTE- NANCES AND IMPROVEMENTS THEREON, Defendant.**

**Civil Action No. 97–T–862–N.**

United States District Court, M.D. Alabama, Northern Division.

Nov. 20, 1997.

John T. Harmon, Redding Pitt, U.S. Atty., U.S. Atty.'s Office, Montgomery AL, for Plaintiff.

*ORDER*

MYRON H. THOMPSON, District Judge.

This civil forfeiture proceeding, initiated pursuant to 21 U.S.C.A. § 881(a)(7), is again before the court, this time on a request by plaintiff United States of America that it be allowed to substitute a new warrant of arrest *in rem* in light of this court's earlier denial of the government's *ex parte* request for issuance of such a warrant.[1] The court will grant, in part, the request to substitute.

I.

On June 10, 1997, the court ordered the government to show cause why its request for issuance, without notice and hearing, of a warrant of arrest *in rem* of two identified parcels of real property should not be denied in light of the recent opinion of the Eleventh

---

**1.** Section 881(a)(7) provides:

"(a) ...

"The following shall be subject to forfeiture to the United States and no property right shall exist in them:

.     .     .     .     .

"(7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used,

or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner."

Circuit Court of Appeals in *United States v. 408 Peyton Rd., S.W. Atlanta, Fulton County, Ga*, 112 F.3d 1106 (11th Cir.1997). The government responded to this order on June 18, 1997, by raising several arguments why the arrest warrant should issue.

First, the government argued that the *408 Peyton Rd.* decision did not forbid "issuance" of an arrest warrant without prior notice and hearing, merely "execution" of that warrant. Second, relying on *United States v. $38,-000.00 in U.S. Currency*, 816 F.2d 1538 (11th Cir.1987), the government averred that execution of an arrest warrant on the two parcels of real property is required to enable this court to assert jurisdiction over them in an *in rem* proceeding. Posting notice on the property and leaving a copy of process with the owner or occupant, the government said, is not enough to secure jurisdiction. And, third, the government said that it worded the warrant in this action with sensitivity to the holding in *408 Peyton Rd.*, for the warrant forbids seizing the property, whereas the rejected warrant in *408 Peyton Rd.* directed that the property be arrested and seized by the United States Marshals. The government said that, given its wording, the warrant in this case "cannot afford the government any source of authority to impermissibly infringe upon a private interest" in the property arrested, and thus due process was not implicated. In an order entered July 16, 1997, denying the government's *ex parte* request for issuance of an arrest warrant, the court rejected these arguments for the reasons that follow.

The *408 Peyton Rd.* court tracks the Supreme Court case of *U.S. v. James Daniel Good Real Property ("Good")*, 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), point by point, using the three-part balancing analysis articulated in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976),[2] and finding execution of warrant for arrest and seizure of real property, even without asserting physical control, violates the due process clause of the fifth amendment to the United States Constitution, unless there has been prior notice and hearing, or exigent circumstances are present.[3] *See also United States v. 2751 Peyton Woods Trail, S.W.*, 66 F.3d 1164, 1167 (11th Cir.1995) (lack of notice and hearing prior to issuance of warrants and physical invasion and seizure of real properties rendered warrants invalid and unconstitutional); *United States v. One Parcel of Real Property, Located at 9638 Chicago Heights, St. Louis, Mo.*, 27 F.3d 327 (8th Cir.1994) (same).

As to the first point, the government is technically correct that due process is not implicated until and unless the arrest warrant is executed. However, issuing a warrant while staying its execution is a futile exercise. No advantage is gained by affording due process after issuance but before execution, instead of before both issuance and execution of the warrant.

Second, the government's position, that jurisdiction may not be asserted without arrest of the warrant in this matter, is erroneous. *$38,000.00 in U.S. Currency*, upon which the government relied, concerns arrest of movable property, not real property. The *Good* Court made it abundantly clear that jurisdiction over real property can be asserted by posting notice on the property and serving process upon the owner or occupant of the property *in rem*. The Court explained:

**2.** According to *408 Peyton Rd.*, "The *Mathews* analysis requires consideration of (1) the private interest affected by the official action, (2) the risk of an erroneous deprivation of *that* interest through the procedures used, as well as the probable value of additional safeguards, and (3) the Government's interest, including the administrative burden that additional procedural requirements would impose. *Good*, 510 U.S. at 53, 114 S.Ct. at 501." 112 F.3d at 1109.

**3.** "To establish exigent circumstances, the Government must show that less restrictive mea-

sures—i.e., a *lis pendens*, restraining order, or bond—would not suffice to protect the Government's interests in preventing the sale, destruction, or continued unlawful use of the real property." *Good*, 510 U.S. at 62, 114 S.Ct. at 505.

"The purpose of a *lis pendens* is to notify prospective purchasers and encumbrancers that any interest acquired by them in property is subject to the decision of the court in pending litigation." *408 Peyton Rd.*, 112 F.3d at 1108 n. 2.

## 1378

"Because real property cannot abscond, the court's jurisdiction can be preserved without prior seizure. It is true that seizure of the *res* has long been considered a prerequisite to the initiation of *in rem* forfeiture proceedings.... This rule had its origins in the Court's early admiralty cases, which involved the forfeiture of vessels and other movable personal property.... *See ... The Brig Ann,* 13 U.S. (9 Cranch) 289, 3 L.Ed. 734 (1815).... Justice Story, writing for the Court in *The Brig Ann,* explained the justification for the rule as one of fixing and preserving jurisdiction: '[B]efore judicial cognizance can attach upon a forfeiture *in rem,* ... there must be a seizure; for until seizure it is impossible to ascertain what is the competent forum.' 13 U.S. (9 Cranch) at 291. But when the *res* is real property, rather than personal goods, the appropriate judicial forum may be determined without actual seizure.

"As *The Brig Ann* held, all that is necessary '[i]n order to institute and perfect proceedings *in rem,* [is] that the thing should be actually or constructively within the reach of the Court.' *Ibid.* And as we noted last Term, '[f]airly read, *The Brig Ann* simply restates the rule that the court must have actual or constructive control of the res when an *in rem* forfeiture suit is initiated.' *Republic National Bank [of Miami v. United States,]* 506 U.S. [80], 87, 113 S.Ct. [554], 559, [121 L.Ed.2d 474 (1992)]. In the case of real property, the *res* may be brought within the reach of the court simply by posting notice on the property and leaving a copy of the process with the occupant. In fact, the rules which govern forfeiture proceedings under § 881 already permit process to be executed on real property without physical seizure:

> "'If the character or situation of the property is such that the taking of actual possession is impracticable, the marshal or other person executing the process shall affix a copy thereof to the property in a conspicuous place and leave a copy of the complaint and process with the person having possession or the person's agent.' Rule E(4)(b), Supplemental Rules for Certain Admiralty and Maritime Claims."

*Good,* 510 U.S. at 57–58, 114 S.Ct. at 503 (citations omitted). Therefore, the *Good* case is not inconsistent with the *$38,000.00 in U.S. Currency* case, and, to the extent it might be, overrules that case.

Third, the *Good* case and *Connecticut v. Doehr,* 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) (mere attachment of premises, without prior hearing, though not infringing on any tangible property rights, such as the use and enjoyment, or collecting of rents, violates due process), show that any infringement of property rights, no matter how intangible, may raise due-process concerns. Thus, the protection of ordering the marshal not to seize the property, or conduct an inventory, does not necessarily immunize the proposed warrant in this case from due-process concerns. *408 Peyton Rd.,* 112 F.3d at 1111 (physical control not of paramount importance when determining whether a constitutional cognizable seizure of real property has taken place). Even a temporary deprivation pending a later hearing may be significant for constitutional purposes. The central point is whether important rights of ownership are bestowed upon the government by execution of an arrest warrant on the property. Here, the warrant suggested that title has been forfeited to the government, for the warrant itself stated: "the court being satisfied that ... there is probable cause [for arrest] and that grounds for application for issuance of a warrant exists, *title having vested* in the United States by operation of law (emphasis added). *See Good,* 510 U.S. at 53, 114 S.Ct. at 501 (seizure implicated significant private interest, because if "deprived Good of valuable rights of ownership, including the right of sale, the right of occupancy, the right to unrestricted use and enjoyment, and the right to receive rents. All that the seizure left him, by the Government's own submission, was the right to bring a claim for the return of title at some unscheduled future hearing."). Furthermore, the statute authorizing forfeiture states that property described therein "shall be subject to forfeiture to the United States and no property rights shall exist in them," 21 U.S.C.A. § 881(a), and goes on say that, "Any property subject to civil forfeiture to the United

States ... may be seized ... upon process issued pursuant" to the rules, by court order. § 888(b).

If the court-ordered arrest warrant says, as this one did, that the property shall not be taken into custody or seized, it renders the purpose of the statute nugatory. The statute is not a personal jurisdictional one, after all, but a civil forfeiture statute. Either the government must concede that the arrest affects the owner's property rights, in which case due process is implicated, or that the arrest serves no more purpose than the assertion of jurisdiction and the giving of notice, which makes the warrant superfluous, since such can be perfected by means other than an arrest warrant. The *Good* Court, as stated, made clear that jurisdiction over real property can be asserted by posting notice on the property and serving process upon the owner or occupant of the property *in rem.*

As for exigent circumstances, "no pressing need for prompt governmental action justifie[s] *ex parte* seizure of real property in the civil forfeiture context." *408 Peyton Rd.*, 112 F.3d at 1112 (citing *Good*, 510 U.S. at 56, 114 S.Ct. at 502). In order to establish exigent circumstances, the government has the burden of showing that somehow the owner could and will destroy the property, or that lesser protections, such as *lis pendens* notice alone, or restraining orders, will not suffice to protect the government interest.[4] In this case, the government has made no such showing, so as to justify an exception to the due-process requirement, or, to put it a different way, to show that the third *Mathews* factor (the government's interest in pre-hearing seizure), is weighty enough to out balance the other two factors (private interest in one's property and the risk of erroneous deprivation).[5]

## II.

The government has now responded with a motion to substitute a new warrant. The new warrant omits the "vesting title" language but is otherwise essentially the same as the earlier one. The government maintains that, although an arrest warrant for

seizure of real property cannot be "executed" without appropriate notice or hearing, the court must still "issue" the arrest warrant in order to give the United States Marshal the necessary authorization for posting of the notice. The government again writes that, "Unless and until the warrant is issued, the United States Marshal will have no basis for executing and posting the notice as required." The government takes issue with the court's conclusion that issuing a warrant while staying its execution is "futile." Indeed, according to the government, *Good* and *408 Peyton Rd.* require issuance of an arrest warrant. The court again rejects the government's argument.

The government correctly notes that, in *Good,* the Supreme Court wrote that, "In the case of real property, the *res* may be brought within the reach of the court simply by posting notice on the property and leaving a copy of the process with the occupant." 510 U.S. at 58, 114 S.Ct. at 503. The *Good* Court cites, with approval, *United States v. TWP 17 R 4. Certain Real Property in Me.*, 970 F.2d 984 (1st Cir.1992), for the proposition that process can be served and jurisdiction perfected without arrest or seizure. 510 U.S. at 58, 114 S.Ct. at 503. There, the First Circuit wrote:

"In the present case, the Government did not 'seize' the real property. Instead, the Marshal's posting of the arrest warrant served as notice to the *in rem* defendants of the civil complaint filed against them. Appellant ... has not shown that he was denied access to the property in question, which would indicate an actual seizure of the property by the government. A seizure occurs when 'there is some meaningful interference with an individual's possessory interests in the property seized.... We find no such meaningful interference' here for the warrant executed in this case only gave notice to the defendant *in rem*— it did not effect a seizure. Posting an *in rem* defendant is an appropriate method of notifying such a defendant of the action against it in much the same way an *in*

---

4. *See supra* note 3.

5. *See supra* note 2.

*personam* defendant is served with a copy of a complaint. It is a fictional way of acquiring jurisdiction over the *res* in an *in rem* action.

\* \* \* \* \* \*

"While the posting of an arrest warrant might hinder an owner's ability to sell his/her property, we do not believe that it amounts to such a deprivation of property rights so as to warrant due process protection under the Fifth Amendment. As we conclude in the first part of this opinion, the posting of the property with the arrest warrant served as a notice to the *in rem* defendant that a civil complaint was filed against it, in much the same way an *in personam* defendant is served with a copy of the complaint."

*Id.* at 989–90. The government then reasons that, because notice must be posted on the property and process must be served upon the occupant or owner, there can be no notice and process until the arrest-and-seizure warrant is issued by the court, albeit without execution.

The government's reasoning is flawed. The court remains convinced that the government's request, that the court issue the arrest warrant but stay its execution, is futile. A warrant, in the context presented here, is nothing more than an authorization by a governmental entity to do something. Webster's Third New International Dictionary at 2577 (1976). Thus, a warrant, when issued by a court, is tantamount to a simple order. Here, the government is requesting that the court issue not just a warrant or order but a "seizure" or "arrest" warrant, for the government is asking that the court issue the warrant but stay the seizure aspect. However, there is no reason why a simple warrant for posting of notice—or more to the point a simple order authorizing posting of notice—would not be adequate. It is possible to serve, by posting, the complaint for forfeiture *in rem* and a notice of forfeiture proceeding on the property. Posting service serves just as well to secure jurisdiction over the *res* and protect it, pending the owner's filing of an interest in the property, and a judicial hearing on the matter.

For example, in *United States v. Real Property Located at 165 Adelle Str., Jackson, Miss.*, 850 F.Supp. 534 (S.D.Miss.1994), the government filed a verified complaint for forfeiture in regard to real property described as the defendants in the lawsuit, along with a verified affidavit setting out the probable cause for forfeiture. The title owner of the property was given notice of the action by certified mail, return receipt requested, stating that she must file a claim for any interest in the property within ten days of receiving the notice or the property would be forfeited to the government. The government also served notice on the real and personal property by posting at the property the summons, a copy of the verified complaint for forfeiture, and a notice of forfeiture action. The court held that this was precisely the kind of pre-deprivation notice and opportunity to be heard contemplated by *Good*

"The holding in *Good* is clearly on point with the facts of this case. The Court finds that the government has complied with *Good* by providing notice to both the property in this case and the property owner before attempting to seize the property. In that notice, the government stated its claim to the property in question and specifically informed [the owner] that she had ten days during which to file any claim she had to the property in question. No seizure of the property occurred before the Judgment of Forfeiture by Default was entered. Furthermore, there is no evidence in the record that the government has yet attempted to seize the property. The court therefore finds that the government provided [the owner] with notice and an opportunity to be heard before attempting any seizure of the property in this matter."

850 F.Supp. at 537.

But more importantly, the warrant (the government asks that the court sign and issue) and the attendant notice (the government asks that the court approve for posting on the property and for service on the owner and occupant) are misleading. The warrant is titled "warrant of *arrest in rem*," and the notice is titled "notice of *arrest*." (Emphasis added.) Both give the impression that some-

thing has been arrested, that is, taken into custody or seized. Therefore, while the warrant contains language that execution of arrest or seizure is stayed, the initial impression given by the warrant is that the subject property has been arrested and seized. In the notice, moreover, this initial impression of arrest is not even corrected in the body of the notice, and those reading the notice are left with the impression that the property has been arrested or seized. Indeed, this mis-impression is later reinforced in the notice's body because the notice refers to the warrant as a "warrant of *arrest in rem,*" without any clarification that arrest or seizure has been stayed. (Emphasis added.) The court cannot approve notice and process that leave the public—in particular, the owner or occupant who receives the notice and all who read the notice posted on the property—with the mistaken impression that real property has been arrested or seized when it has not.

In conclusion, as the government acknowledges, all that is needed, and all it wants, is authorization for the United States Marshal to initiate appropriate process, including the posting of notice. It then follows that an "order" and "notice" to this effect are all that is needed. With an order mentioning and authorizing only notice, there will be no need to stay seizure, for the order would not mention or authorize seizure in the first place. Similarly, the notice should indicate only that a complaint of feature has been filed.

The government's request that it be allowed to substitute a new warrant will be granted to the extent that the court will give authorization for service of process, including posting of notice, by the United States Marshal. The court will title this authorization an "order" rather than a "warrant," so as to avoid confusion. Although the court could give a warrant for posting of notice and service of other process, a warrant has typically been taken in these forfeiture cases to authorize seizure as well. In addition, the court will title the notice as a "notice of complaint of forfeiture." The bodies of both the order and the notice will either not mention arrest or seizure or will make clear that

arrest or seizure merely may be sought in the future.

For the above reasons, it is ORDERED that the motion to substitute warrant of arrest *in rem,* filed by plaintiff United States of America on July 31, 1997, is granted to the following extent:

(1) The attached "Order for Notice" will be executed by the court; and

(2) The attached "Notice of Complaint of Forfeiture" will be approved for execution and service by the United States Marshal.

ATTACHMENT A

ORDER FOR NOTICE IN REM

TO: THE UNITED STATES MARSHAL FOR THE MIDDLE DISTRICT OF ALABAMA

WHEREAS, a Verified Complaint for Forfeiture *In Rem* has been filed in the United States District Court for the Middle District of Alabama alleging that the real property and premises located at 101 North Liberty Street (Parcel One) and 105 Liberty Street (Parcel Two) Clanton, Chilton County, Alabama, with all appurtenances and improvements thereon, was used or intended to be used in any manner or part to commit or to facilitate the commission of a violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.,* which is punishable by imprisonment of more than one year; and therefore the property is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7).

The Defendant Parcel One, located at 201 North Liberty Street, Clanton, Chilton County, Alabama, is more specifically described as follows:

A lot or parcel of land lying West of the L & N Railroad in the Town of Clanton, Alabama, and lying West of and adjacent to Liberty Street and being more particularly described as follows: Begin at the Northwest intersection of the right of way of Liberty Street and First Avenue in West End, Clanton, Alabama, as the point of beginning, and from said point as the point of beginning thence run Northerly along the West right-of-way of Liberty

Street 83 feet to a point; thence run West 140 feet, more or less, thence run Southerly and parallel to the West boundary of Liberty Street 83 feet to a point on the North right-of-way line of First Avenue in West End, Clanton, Alabama; thence run on and along said North boundary line of said First Avenue in an easterly direction back to the point of beginning. The lot herein described being the original homeplace of John B. and Carrie Mae Stone.

The Defendant Parcel Two, located at 105 Liberty Street, Clanton, Chilton County, Alabama, is more specifically described as follows:

A lot or parcel of land lying West of the L & N Railroad in the Town of Clanton, Alabama, and lying West of and adjacent to Liberty Street and being more particularly described as follows: Beginning at the Northwest intersection of the right of way of Liberty Street and First Avenue in West end Clanton, Alabama, and thence run Northerly along the West right of way of Liberty Street 83 feet and to the Northeast corner of a lot heretofore conveyed by grantors to the grantees and being the point of beginning of the property herein conveyed. From said point of beginning run North along the West boundary of Liberty Street 64 feet, more or less, thence Westerly 140 feet, thence Southerly and parallel to the West boundary of Liberty Street 64 feet, more or less, and to the Northwest corner of the John B. and Carrie M. Stone lot, thence East along the John B. and Carrie Mae Stone North boundary 140 feet back to the point of beginning. Situated, lying and being in Section 2, Township 21, Range 14 and being part of the lands owned by Tom W. Kemp as shown in Deed Book 279, Page 466 and Deed Book 193, Page 332.

And, the Court being satisfied that based upon the Verified Complaint for Forfeiture *In Rem* there is probable cause to believe that the real property and premises so described was so used or intended for such use, and that grounds for application for issuance of service of process and other appropriate notice exist;

YOU ARE THEREFORE HEREBY COMMANDED to execute the attached Notice of Complaint of Forfeiture and post a copy of the Notice on the Defendant real property (Parcel One and Parcel Two) in an open and visible manner. The Defendant property shall not be seized or otherwise taken into custody, and the United States Marshals Service is not responsible for the care or maintenance of the property during the pendency of this forfeiture actions;

AND FURTHER TO SERVE on the occupant, if any, and the record owner of the Defendant real property a copy of the Notice,

the Complaint for Forfeiture *In Rem,* and this Order for Notice in Rem in a manner consistent with the principles of service of process of an action *in rem* under the Supplemental Rules for Certain Admiralty and Maritime Claims, Federal Rules of Civil Procedure, within a reasonable time of the posting of the notice upon the Defendant property;

YOU ARE FURTHER COMMANDED that you *shall not* conduct an inventory of the Defendant real property nor enter said property and you *shall not* post any papers, notices, or items on the Defendant real property (Parcel One and Parcel Two), other than affixing a copy of the process as set forth above;

AND YOU ARE FURTHER COMMANDED TO PUBLISH in the *Montgomery Advertiser* (a newspaper of general circulation in this District), and the *Chilton County News* (a newspaper in the county where the property is located), notice to all persons of this action and the procedures to be followed for making a claim as described in this Order for Notice In Rem. You are further authorized in the exercise of your discretion to publish such notice in additional newspapers as you deem necessary;

Additional procedures and regulations regarding this forfeiture action are found at 19 U.S.C. §§ 1602–1619, and Title 21, Code of Federal Regulations (C.F.R.) §§ 1316.71–1316.81. All persons and entities who have an interest in the Defendant property may, in addition to filing a claim or in lieu of the

filing of a claim, submit a Petition for Remission or Mitigation of the forfeiture for a non-judicial determination of this action pursuant to 28 C.F.R. Part 9.

## ATTACHMENT B

### NOTICE OF COMPLAINT OF FORFEITURE

**TO ALL INTERESTED PERSONS IN THE ABOVE-STYLED CASE:**

Notice is hereby given that the United States of America has filed a Complaint for Forfeiture *In Rem* and will request a Warrant of Arrest *In Rem* pursuant to Title 21, United States Code, Section 881(a)(7), and Title 28, United States Code, Section 1345 and Section 1355, for forfeiture of a parcel of property located at 101 North Liberty Street (Parcel One), and 105 Liberty Street (Parcel Two), Clanton, Chilton County, Alabama, with all appurtenances and improvements thereon. The legal-description of One, and at Book § 3, page 195 (Parcel Two), real property records, Office of the Judge of Probate, Chilton County, Alabama. All Claimants to this property must file their claims, pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims, within ten (10) days from the date of publication of this Notice, or actual notice of this action, whichever occurs first, and must serve and file their answers within twenty (20) days after the filing of the claim. All such claims and answers must be filed with the Office of the Clerk, United States District Court, Middle District of Alabama, Montgomery, Alabama, with an additional copy sent to:

Redding Pitt, United States Attorney
Office of the United States Attorney
Middle District of Alabama
One Court Square, Suite 201 (36104)
Post Office Box 197
Montgomery, AL 36101–0197
(334) 223–7280

Additional procedures and regulations regarding this forfeiture action are found at 19 U.S.C. Sections 1602–1619, and Title 21, Code of Federal Regulations (C.F.R.), Sections 1316.71–1316.81.

All persons and entities who have an interest in the Defendant property may, in addition to filing a claim or in lieu of the filing of a claim, submit a Petition for Remission or Mitigation of the forfeiture for a non-judicial determination of this action pursuant to 28 C.F.R. Part 9.

Florence M. Cauthen
United States Marshal
Middle District of Alabama