PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
12/31/98
THOMAS K. KAHN
CLERK

_____

No. 97-6354

_____

D. C. Docket No. CV-96-HM-216-J

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAND, WINSTON COUNTY, Certain Real
Property Located near Highway 195,
Winston County, Alabama, together with all
improvements, fixtures and
appurtenances thereon,

Defendant,

MELPHIA BAILEY WOODS,

Claimant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(December 31, 1998)**

Before ANDERSON and BIRCH, Circuit Judges, and COHILL*, Senior District Judge.

*Honorable Maurice B. Cohill, Jr., Senior U.S. District Judge for the Western District of
Pennsylvania, sitting by designation.

BIRCH, Circuit Judge:

Melphia Woods appeals the district court's order granting summary judgment to the United States in this forfeiture action brought pursuant to 18 U.S.C. § 1955(d). Woods contends that summary judgment should not have been granted because (a) she did not receive proper notice of the forfeiture action and (b) there are disputed material facts concerning the posting of "No Trespassing" signs on the property. Woods also argues that the district court failed to rule on the excessive fines affirmative defense on the motion for summary judgment and improperly used a "probable cause" burden of proof in the forfeiture action. For the reasons that follow, we find that the government met its probable cause burden in the forfeiture action. However, we find that Woods did not receive proper notice of the forfeiture. We REMAND the case to the district court to assess damages, if any, for the due process violation and to consider, in the first instance, Woods' excessive fines affirmative defense.

## I.   BACKGROUND

In 1981, Melphia Woods and her now deceased husband opened the "Clear Creek Sportsman's Club" (CCSC) on the property in question.  From 1981 until the CCSC was closed in 1992, it operated for at least a part of every cockfighting season, except 1984-85.  Cockfights were held once every two weeks throughout the season which ran from the end of the October to the following June or July.  It is undisputed the CCSC was used as a venue for cockfighting and illegal gambling.  In 1987, Woods agreed to lease the property under a lease-sale contract to Tommy R. Wood, Ralph Osborn, and Larry Osborn.  After entering into this agreement, Woods operated a concession stand on the property during the 1987-88 cockfighting season.  Subsequently, Woods only "cleaned up" the premises after events for six dollars per hour.  Woods and her husband spent over $100,000 on the building and $8,000 in improvements.  The

lease/purchasers paid Woods "four or five payments" and made a $10,000 down payment toward a $90,000 purchase price.

On May 12, 1993, the United States filed a civil forfeiture action seeking the in rem forfeiture of the property for its use in violation of 18 U.S.C. § 1955, which prohibits illegal gambling businesses. Woods was the only claimant to challenge the forfeiture. The forfeiture action was voluntarily dismissed by the United States on procedural grounds. On January 26, 1996, the United States filed this second civil forfeiture action, again pursuant to 18 U.S.C. § 1955.

The district court entered an order for warrant of arrest in rem on April 2, 1996. The warrant was executed by posting notice of the warrant of arrest on the property on April 16, 1996. Melphia Woods was again the only claimant to the property. The district court granted the United States' motion for summary judgment on March 24, 1997.

## II.   DISCUSSION

We review de novo a district court's order granting a motion for summary judgment on an issue of law, United States v. Four Parcels of Real Property Located in Greene & Tuscaloosa Counties, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc). In a summary judgment motion, we view all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. Rowe v. Schreiber, 139 F.3d 1381, 1383 (11th Cir. 1998).

## A. Due Process

Woods argues that the district court's holding that posting of an arrest warrant does not constitute seizure of the property is in conflict with our holding in United States v. 408 Peyton Road, S.W., 112 F.3d 1106 (11th Cir. 1997). Additionally, Woods argues that there was an issue of material fact as to when, and for how long, the United States posted "No Trespassing" signs on the building. The United States replies that the posting of the arrest warrant was executed pursuant to court order and that the

government took steps to ensure that Woods retained the right to full occupancy, use, and enjoyment of the property.

The Due Process Clause of the Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." Generally, individuals must receive notice and an opportunity to be heard before the government deprives them of property. United States v. James Daniel Good Real Property, ("Good"), 510 U.S. 43, 48, 114 S. Ct. 492, 498, 126 L.Ed.2d 490 (1993).[1] The purpose of requiring prior notice and a hearing is to "protect [the owner's] use and possession of property from arbitrary encroachment – to minimize substantively unfair or mistaken deprivations of property." Fuentes v. Shevin, 407 U.S. 67, 80-81, 92 S. Ct. 1983, 1994-95, 32 L.Ed.2d 556 (1972). To demonstrate the triggering of a "seizure," the claimant must put forth evidence that the

---

[1]While the property at issue in Good was a personal residence, the Supreme Court specifically noted the constitutional requirements outlined in that case applied to all real property. Good, 510 U.S. at 61, 114 S. Ct. at 505 ("The constitutional limitations we enforce in this case apply to real property in general, not simply to residences.").

government has interfered with her right to occupy, use, enjoy, or receive rents from the defendant real property while the forfeiture action is pending.  Good, 510 U.S. at 54, 114 S. Ct. at 501.  Here, Woods has argued that the notice of warrant of arrest coupled with the "No Trespassing" sign that was placed on her property during the first forfeiture action and remained posted after the filing of the second forfeiture action was initiated indicate that the property was being "seized," as that term is defined in Good to bring the government's actions within the Due Process Clause.

After the filing of briefs in this appeal, we granted en banc rehearing of 408 Peyton Road.  As a result, the district court did not have the benefit of our recent ruling in 408 Peyton Road, ___ F.3d ___ (11th Cir. 1998) (en banc) at the time it rendered its opinion in this case.  In 408 Peyton Road, we recognized that "the Government's choice to exercise physical control over the defendant real property should not be regarded as the sine qua non of a constitutionally cognizable seizure." ___ F.3d at ___.  In

that case, the district court issued both an "arrest warrant" and a "seizure warrant." We specifically left open the question of whether due process requirements would be triggered for the use of an "arrest warrant" alone. This distinction is an issue we face in the present case. However, we need not definitively hold that all arrest warrants will constitute cognizable seizures. Rather, we hold that in the factual circumstances presented in this case, there was "meaningful interference with [Woods'] possessory interests" so as to constitute a seizure. Maryland v. Macon, 472 U.S. 463, 469, 105 S. Ct. 2778, 2782, 86 L.Ed.2d 370 (1985).

In Good, the Supreme Court considered a forfeiture proceeding where the government executed an "arrest warrant" and a "seizure warrant" without notice or a hearing. The Court held this to be a violation of the Due Process Clause. However, the Court left open the possibility that certain warrants would not trigger due process requirements. See 510 U.S. at 58, 114 S. Ct.

at 503.[2]  In <u>408 Peyton Road</u>, we recognized that the title of a

warrant may not be determinative of whether there has been a

constitutionally cognizable seizure. ___ F.3d at ___ n.9.  We

therefore must consider the specific facts of this case in

determining whether the government's actions in execution of the

arrest warrant were a "seizure" so as to trigger due process

requirements.

The "Warrant for Arrest and Notice" to the U.S. Marshal

states, in relevant part:

> And, the Court having ordered that grounds for application for issuance of warrant of arrest <u>in rem</u> do exist, YOU ARE, THEREFORE, HEREBY COMMANDED to arrest the above described property.
> YOU ARE FURTHER COMMANDED TO POST upon said real property in an open and visible manner notice of <u>such seizure</u> at the time thereof, making the <u>government's seizure</u> open and notorious;

---

[2]Specifically, the Court cited <u>United States v. TWP 17 R 4, Certain Real Property in Maine</u>, 970 F.2d 984 (1st Cir. 1992), where the court held that there had been no "seizure" when a warrant of "arrest in rem" was issued by the clerk of the district court directing the U.S. Marshall to "arrest the property . . . and detain the same in your custody until further order of the Court." <u>Id.</u> at 986.  The court found that because there was no direction to the Marshal to actually seize the property, the warrant  of "arrest in rem" did not trigger the application of the Due Process Clause. <u>Id</u>. at 989.

> AND FURTHER TO SERVE upon the record owner thereof a copy of this warrant in a manner consistent with the principles of service of process of an action <u>in</u> <u>rem</u> under the Supplemental Rules For Certain Admiralty and Maritime Claims, Federal Rules of Civil Procedure, within a reasonable time of <u>seizure</u> . . .

R1-5-1-2 (emphasis added).

Additionally, Woods asserts that the United States Marshal posted a "No Trespassing" sign on the property at the time he served her with notice of the arrest warrant. R1-24-3. Woods attached a photograph to her affidavit which she avers was taken on April 19, 1996, the day the warrant of arrest was posted. The photograph shows two "No Trespassing" signs – one faded and one clearly visible. R1-24-Exh. The government contends that no new "No Trespassing" sign was posted on the property when the arrest warrant was served in the second forfeiture action on April 16, 1996.[3]

---

[3]As explanation for the apparent confusion, the government asserts that a "No Trespassing" sign was posted on the property after the first forfeiture action filed by the government on May 23, 1992. Because of fading, a new "No Trespassing" sign was posted at some point after the first forfeiture action, but <u>before</u> the second forfeiture action. R1-28-1-2.

We note at the outset that, at the very least, there is an issue of material disputed fact as to the timing of the posting of the "No Trespassing" sign that effectively should have precluded the granting of summary judgment on the due process issue. Even were it not for this critical disputed factual issue, however, it is undisputed that a "No Trespassing" sign existed on the property at the time the arrest warrant for the second forfeiture was served. An owner cannot be expected to construe the sign as meaningless because it was posted during the first forfeiture action that had been dismissed, and not during the second pending forfeiture action. The plain fact is that sign remained posted.[4] If the government no longer intended the "No Trespassing" signed to be enforced, it should have been removed. Leaving the sign posted on the property inhibited Woods' right to full occupancy, use, and enjoyment of

---

[4]The government has not disputed the authenticity of Woods' photograph of April 19, 1996, but rather has disputed her contention that a new "No Trespassing" sign was posted after the initiation of the second forfeiture proceeding. Brief of Appellee at 18.

the property.  See Good, 510 U.S. at 54, 114 S. Ct. at 501 (seizure of property gives the government "the right to prohibit sale . . . to evict occupants, to modify the property, to condition occupancy, to receive rents, and to supersede the owner in all rights pertaining to the use, possession, and enjoyment of the property.").

We are unpersuaded by the government's suggestion that the arrest warrant should not trigger due process requirements because once the government posts an arrest warrant, an owner may remove the notice without incurring any legal penalty.  While this may state a fine legal point, see United States v. TWP 17 R 4, Certain Real Property in Maine, 970 F.2d 984, 990 (1st Cir. 1992), we find the language in an arrest warrant referring explicitly to "seizure" of the arrested property coupled with the continued posting of a "No Trespassing" sign, as occurred in this case, would lead an ordinary person to conclude that her rights to the

property had been inhibited.[5]  In addition, although the government also contends that the U.S. Marshal who posted the warrant in the second forfeiture action told Woods that he was not taking possession of the property,[6] we conclude, based on the record, that the government's actions did not clearly communicate to Woods the status of the property.[7]  Again, a "No Trespassing" sign was posted on the property at the initiation of the first forfeiture proceeding and remained on the property after the initiation of the second forfeiture proceeding.  In addition, the Notice of Warrant of Arrest indicated that the property had been

---

[5]A warrant for arrest gives the "impression that something has been arrested, that is, taken into custody or seized."  United States v. Two Parcels of Real Property Located at 101 N. Liberty St. & 105 N. Liberty St., 986 F. Supp. 1376, 1380-81 (M.D. Ala. 1997) (where court labeled authorization to post notice of forfeiture an "order" rather than a "warrant" because "a warrant has typically been taken in these forfeiture cases to authorize seizure as well.").

[6]The Marshal stated that he "explained to Ms. Woods that a new civil action was pending against the defendant real property but that she would retain custody and control over the property.  When Ms. Woods asked me if she could sell the defendant real property, I advised her that the Government had filed a new notice of lis pendens which would likely affect her ability to convey free and clear title to the defendant real property."  R1-28-3.

[7]Even ordering the U.S. Marshal not to seize the property may not necessarily immunize a warrant from due process concerns.  See, e.g., Good, 510 U.S. at 54, 114 S. Ct. at 501 (relying on Connecticut v. Doehr, 501 U.S. 1, 111 S. Ct. 2105, 115 L.Ed.2d 1 (1991) for the proposition that mere attachment of premises, without prior hearing, though not infringing on any tangible property rights violates due process).

13

seized.  Woods' understanding that she no longer retained full use of the property under these circumstances, therefore, was reasonable.

Our holding in this case does not signify that in every situation an "arrest warrant" will constitute a cognizable seizure.[8] We recognize that "[i]n the case of real property, the res may be brought within the reach of the court simply by posting notice on the property and leaving a copy of the process with the occupant." Good, 510 U.S. at 58, 114 S. Ct. at 503.  However, in this case, the government did not simply "post notice" on the property.  The Notice of Warrant of Arrest contained language of "seizure" which would leave the property owner with the impression that she does not have full custody or control over the property.  Additionally, a "No Trespassing" sign remained posted on the property.  It does

---

[8]    See United States v. Turner, 933 F.2d 240, 245 (4th Cir. 1991) ("arrest warrant" analogous to summons, rather than "warrant" within meaning of Fourth Amendment);  United States v. Real Property Known & Numbered as 429 S. Main St., 906 F. Supp. 1155, 1159 (S.D. Ohio 1995) (due process requirements of notice and hearing not triggered when U.S. Marshal served in rem warrant, executed an occupancy agreement and then left the property and no one from Marshal's office attempted to exercise control over the property or interfere with the claimant's collection of rent).

not satisfy the Due Process Clause to tell the property owner she has full control over the property, yet leave her with documents indicating the property has been seized and there is to be "No Trespassing."

The government may still protect its interest in the property without violating process due to the owner. "The Government's legitimate interests at the inception of the forfeiture proceedings are to ensure that the property not be sold, destroyed, or used for further illegal activity prior to the forfeiture judgment. These legitimate interests can be secured without seizing the subject property." Good, 510 U.S. at 58, 114 S. Ct. at 503. For example, the government may file a lis pendens and may post on the property a summons, a copy of the verified complaint for forfeiture, and a notice of the forfeiture action. This provides notice of the forfeiture to the owner without seizing the property.[9]

---

[9]See, e.g., United States v. Real Property Located at 3284 Brewster Drive, 949 F. Supp. 832, 833-34 (M.D. Fla. 1996) (warrant of arrest in rem did not trigger application of Due Process Clause because warrant expressly avoided seizure of property). In 3284 Brewster Drive, the warrant stated: "This is not a seizure warrant. This property is not being seized or taken into

15

Such notice could even indicate that a warrant of arrest in rem will be sought in the future by the government.

We find the arrest warrant and attendant circumstances in this case create a constitutionally cognizable seizure. As the Supreme Court instructed in Good, we must evaluate the due process implications of the challenged deprivation under the three-fold test enunciated in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L.Ed.2d 18 (1976). We discuss (a) the private interests that will be affected by a nonphysical seizure, (b) the risk of an erroneous deprivation, and (c) the government's interest in ex parte seizures. See 408 Peyton Road, ____ F.3d at ___-___.

First, we have found that the official acts in this case constitute a seizure of property commensurate with the private interests at stake in Good. The protections of the Due Process

custody. Nothing in this Order interferes with the owners' right to maintain control over their property, their right of occupancy, their right to unrestricted use and enjoyment, and their right to receive rents." Id. at 835. The arrest warrant also stated that "the real property is deemed released immediately after arrest." Id..

Clause are not confined to physically-invasive seizures. 408 Peyton Road, ___ F.3d at ___. The seizure here has affected constitutionally significant interests. Second, as the Supreme Court found in Good, the practice of ex parte seizure creates an unacceptable risk of error. Good, 510 U.S. at 55, 114 S. Ct. at 501. Third, we have found that the government may secure its legitimate interests without seizing the subject property. 408 Peyton Road, ___ F.3d at ___.

Therefore, applying the three-part Mathews balancing test, we hold the procedures employed by the government in this case do not comport with the Due Process Clause. Absent exigent circumstances, the Due Process Clause requires the government to afford notice and a meaningful opportunity to be heard before seizing real property. Good, 510 U.S. at 62, 114 S. Ct. at 505; 408 Peyton Road, ___ F.3d at ___.[10] Accordingly, we REVERSE

---

[10]In order to establish exigent circumstances, the government would have to show that less restrictive means – lis pendens, restraining order, or bond – would not suffice to protect the government's interest in the real property. 408 Peyton Road, ___ F.3d at ___. The government in this case has not alleged the existence of any exigent circumstances that would justify ex parte

the district court's summary judgment order with respect to the due process analysis.  However, we AFFIRM the district court's unchallenged holding that the government established probable cause for the forfeiture action and that Woods did not show by a preponderance that the property was not used illegally.

In 408 Peyton Road, we established that:

> when the Government fails to provide predeprivation notice and a hearing, but the property is found to be subject to forfeiture after the process due has been afforded, the proper remedy for a seizure in violation of the Fifth Amendment Due Process Clause is the return of any rents received or other proceeds realized from the property during the period of illegal seizure.

___ F.3d at ___.   Accordingly, we REMAND to the district court to determine whether Woods was deprived of any rents received or other proceeds realized from the property during the period of illegal seizure.

## B.   Excessive Fine

---

seizure of Woods' real property.

18

Woods argues that the district court could not properly have granted summary judgment without addressing her affirmative defense challenging the forfeiture as an "excessive fine" in violation of the Eighth Amendment.[11] The government responds that Woods had the burden to raise the excessive fines argument because it is an affirmative defense to the forfeiture. Because Woods failed to raise the objection at the district court, the government argues, she waived her right to make this argument on appeal.

Woods raised the excessive fine issue as an affirmative defense in her answer to the government's forfeiture complaint. R1-8-7. Woods also repeated the excessive fines defense in her affidavit. R1-24-5. In Woods' cross-motion for summary judgment, the prior affidavits and filings of the appellant were incorporated. R1-26-2. "[I]f a party hopes to preserve a claim,

---

[11]We do not understand Woods to be relying here on an "innocent owner" defense under 19 U.S.C. § 1955, although we have previously held such a defense exists under this section. See United States v. One Single Family Residence Located at 18755 N. Bay Rd., 13 F.3d 1493, 1496 (11th Cir. 1994).

argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it." In re Pan Am. World Airways, Inc., 905 F.2d 1457, 1462 (11th Cir. 1990).  Here, Woods clearly identified excessive fines as an affirmative defense in her answer to the government's forfeiture complaint.  She identified the basis for this claim in her affidavit by comparing the potential forfeit of her business property to the penalty suffered by the three lessees of the property who operated the cockfighting arena from 1987 to 1992.  They pled guilty to misdemeanor charges and were fined $3000.  R1-24-5. Since Woods specifically incorporated into her cross-motion for summary judgment the arguments in her answer and affidavit – which included her challenge to the forfeiture as an excessive fine – Woods did not waive this argument and it is properly before us. See, e.g., National R.R. Passenger Corp. v. Florida, 929 F.2d 1532, 1535 n.6 (11th Cir. 1991) (issue properly before circuit court

where defendant incorporated arguments from motion to dismiss into his reply to plaintiff's motion for preliminary injunction).

In Austin v. United States, 509 U.S. 602, 113 S. Ct. 2801, 125 L.Ed.2d 488 (1993), the Supreme Court held the Eighth Amendment[12] Excessive Fines Clause applies to in rem civil forfeiture proceedings.  We have applied an excessive fines analysis specifically to forfeitures under 18 U.S.C. § 1955 in United States v. One Single Family Residence Located at 18755 North Bay Road, 13 F.3d 1493, 1498-99 (11th Cir. 1994).  The Supreme Court declined in Austin to set out a test for determining whether a forfeiture is constitutionally "excessive."  509 U.S. at 622-23, 113 S. Ct. at 2812.  However, in United States v. One Parcel Property Located at 427 & 429 Hall Street, 74 F.3d 1165 (11th Cir. 1996), we held that the application of the Excessive Fines Clause to civil forfeitures requires

---

[12]"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."  U.S. Const., Amend. 8.

a review of the proportionality of the fine imposed. That is, a court must ask: Given the offense for which the owner is being punished, is the fine (imposed by civil forfeiture) excessive? While the core of proportionality review is a comparison of the severity of the fine with the seriousness of the underlying offense, it would be futile to attempt a definitive checklist of relevant factors. The relevant facts will necessarily vary from case to case.

Id. at 1172 (footnote omitted).[13]

Because the issue of excessive fines may depend on various factors and conduct with which the district court is more familiar than this court, see United States v. One 1978 Piper Cherokee Aircraft, 91 F.3d 1204, 1210 (9th Cir. 1996), we REMAND to the district court to determine in the first instance whether the

---

[13]We note the Supreme Court recently set out a similar test for excessiveness of fines in a criminal forfeiture case.

The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish. . . . We now hold that a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense.

United States v. Bajakajian, ___ U.S. ___, 118 S. Ct. 2028, 2036, 141 L.Ed.2d 314 (1998).

We recognize the Court's decision in Bajakajian has raised questions about the applicability of Austin to all modern civil in rem forfeitures. See 118 S. Ct. at 2035 n.6; United States v. Real Property Known & Numbered as 415 E. Mitchell Ave., 149 F.3d 472, 477 N.3 (6th Cir. 1998). However, we rely on our holding in 18755 North Bay Road for the proposition that the Excessive Fines Clause specifically applies to forfeitures under 18 U.S.C. § 1955. See also United States v. Taylor, 13 F.3d 786, 790 (4th Cir. 1994) (holding Austin applicable to 18 U.S.C. § 1955).

forfeiture here constituted an excessive fine in violation of the

Eighth Amendment.

## C.   Probable Cause

Last, we consider the standard of proof the government must

meet in a forfeiture case.  Woods argues that the district court's

application of a "probable cause" standard of proof to the

important property rights involved in this case constitutes a due

process violation.  The government responds that "probable

cause" is the standard which the district court was bound to apply

pursuant to 19 U.S.C. § 1615, governing forfeiture proceedings.

We recently have reaffirmed that probable cause is the standard

of proof the government must meet in forfeiture cases.  United

States v. One Beechcraft King Air 300 Aircraft, 107 F.3d 829, 829-

30 (11th Cir. 1997) (per curiam) (upholding the constitutionality of

19 U.S.C. § 1615, which provides for the use of the "probable

cause" standard in civil forfeitures).[14]  There is no dispute that the

---

[14]We note, however, that Woods' challenge here is not frivolous.  See United States v. One Parcel of Property Located at 194 Quaker Farms Rd., 85 F.3d 985, 990 (2d Cir.), cert.

government clearly met its burden in this case, as the district court painstakingly detailed. Although Woods suggests that we should impose on the government a more stringent standard of proof, our precedent holds otherwise.

## III. CONCLUSION

Because we find the government's action violated the Due Process Clause, we REVERSE the district court's summary judgment order with respect to the due process analysis. However, we AFFIRM the district court's holding that the government established probable cause for the forfeiture action and that Woods did not show by a preponderance that the property was not used illegally. We REMAND the case for consideration of damages, if any, that result from the due process violation. We also REMAND to the district court for consideration in the first instance of whether the forfeiture violated the

denied, ___ U.S. ___, 117 S. Ct. 304, 136 L.Ed.2d 221 (1996) ("Good and Austin reopen the question of whether the quantum of evidence the government needs to show in order to obtain a warrant in rem allowing seizure – probable cause – suffices to meet the requirements of due process.").

24

Excessive Fines Clause of the Eighth Amendment.  We AFFIRM

the district court's use of the probable cause standard of proof in

forfeiture cases.

AFFIRMED in part, REVERSED in PART and REMANDED

in part.