[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 8, 2000
THOMAS K. KAHN
CLERK

_____

No. 99-11830

_____

D.C. Docket No. CV-96-HM-0216-J

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAND, WINSTON COUNTY, Certain Real
Property Located near Highway 195, Winston
County, Alabama, together with all improvements,
fixtures and appurtenances thereon,

Defendant,

HOWELL M. UPTAIN, Executor of the Estate
of Melphia B. Woods,

Claimant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(August 8, 2000)**

Before EDMONDSON, HULL and WOOD[*], Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge:

This case began in 1993 when the United States filed the first of two civil

actions seeking the in rem forfeiture of the named defendant real estate for its alleged

use in violation of 18 U.S.C. § 1955 prohibiting illegal gambling.[1]  Alabama law

broadly defines gambling but also prohibits any gambling not specifically authorized

by Alabama law.[2]  Cockfighting, the particular gambling in this case, is not

---

[*] Honorable Harlington Wood, Jr., U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

[1] Title 18 § 1955 provides in its pertinent parts:

(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.
(b)  As used in this section–

(1) "illegal gambling business" means a gambling business which–
> (i)   is a violation of the law of a State or political subdivision in which it is conducted;
> (ii)   involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
> (iii)   has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.
> (2)  "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.
****
(d) Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States.

[2] See ALA. CODE §§ 13A-12-20(1), (4), (7), (8), (9); 13A-12-22(a); and the catchall provision 13A-12-20(12), stating that any gambling not specifically authorized by law is unlawful.

2

specifically authorized by Alabama law.[3] Cockfighting may be defined as pitting two cocks, usually equipped with sharp blades on their legs, in a fight against each other. See RANDOM HOUSE WEBSTER'S COLLEGE DICTIONARY 261 (1992). It is most often associated with gambling. Forty-seven states have banned cockfighting, but it remains legal in Oklahoma, Louisiana, and parts of New Mexico.[4]

This is the second appeal to this court involving the forfeiture of the building and property known as the Clear Creek Sportsman's Club. In 1993, the first action filed by the United States was opposed by Melphia Bailey Woods ("claimant" or "Mrs. Woods"), the only claimant to challenge the forfeiture. In light of United States v. 2751 Peyton Woods Trail, 66 F.3d 1164 (11th Cir. 1995), the case was dismissed on procedural grounds without prejudice with leave to refile a similar action within the statute of limitations. See United States v. Certain Real Property Located Near Highway 195, Winston County, Ala., CV-93-HM-0945-J (N.D. Ala. 1993).

The second civil forfeiture action was filed in January 1996. Again claimant filed in protest denying any knowledge of the property's use for illegal gambling and

---

[3] See ALA. CODE § 13A-12-4 (2000):
    Any person who keeps a cockpit or who in any public place fights cocks shall, on conviction, be fined not less than $20.00 nor more than $50.00.

[4] See: http//www.geocities.com/Wellesley/Atrium/2224/CockfightingQA.html.

again alleging the property had been illegally seized by the government. The district court

granted summary judgment in favor of the United States and claimant appealed. This court, in <u>United States v. Land, Winston County</u>, 163 F.3d 1295, 1303 (11th Cir. 1998), affirmed the district court's holding that the government established probable cause for the forfeiture action. <u>Id.</u> at 1303. However, the panel reversed the lower court in determining that the government's action in seizing the property violated the Due Process Clause, and remanded for further proceedings on two issues: whether any damages in the form of rents received or other proceeds were realized from the property during the period of illegal seizure and whether the forfeiture violated the Excessive Fines Clause of the Eighth Amendment. <u>Id.</u> at 1302-03.

On remand, after an evidentiary hearing, the district court concluded the government had not received any rents or other proceeds during the period of the illegal seizure, and, therefore, claimant had not been deprived of anything and was entitled only to nominal damages of One Dollar ($1.00) and costs. It also found the forfeiture did not constitute an excessive fine. Claimant now appeals these findings.

Claimant alleges the property, which the government sold in 1997 for $60,000, was worth over $100,000. According to claimant, the lease value of the property was

$8,400 per year.[5] The property had been purchased by Mrs. Woods and her husband[6] in 1981. They promptly erected a metal building designed for cockfighting at an alleged cost of $100,000. It contained one main cockfighting pit and three other pits, referred to as "drag" pits, complete with stadium seating. There was also an announcer's booth, a food concession stand, a souvenir stand, and holding pens for the cocks.

On this second appeal, in addition to reviewing the two issues remanded to the district court, a new complication arose before oral argument in March 2000. The court was advised by counsel that Mrs. Woods had recently died. Oral argument proceeded conditionally, but counsel were asked to submit supplemental briefs as to the impact of her death on this appeal.[7] We will therefore consider that issue first.

Claimant's estate asserts this action is abated since forfeiture laws are penal in nature and abate upon the death of the alleged wrongdoer. No United States Court of Appeals has as yet considered this precise issue as it relates to a violation of gambling laws.

---

[5]Claimant's brief states the lease value was $8,400 per year. However, the record indicates the figure as $7,800 per year.

[6]According to claimant's brief, Mrs. Woods's husband died on June 27, 1984.

[7] The parties either overlooked or misunderstood the court's request as no additional briefs were filed until brought to the attention of both counsel in June 2000.

The survivability of a cause of action depends on whether the recovery is remedial, an action which compensates an individual for specific harm suffered, or penal, an action which imposes damages upon the defendant for a general wrong to the public. United States v. NEC Corp., 11 F.3d 136 (11th Cir. 1993) (as amended) (citing Schreiber v. Sharpless, 110 U.S. 76, 80 (1884)). The attorney for claimant's estate cites Schreiber to support the fact that punitive or penal actions abate with the death of the alleged wrongdoer. He also cites Kilgo v. Bowman Transportation, Inc., 789 F.2d 859, 876 (11th Cir. 1986), to illustrate that penal actions do not survive death of the plaintiff. The court in Kilgo held that a plaintiff's civil rights action under Title VII survived her death as the action was remedial rather than penal. Id. at 876. The court stated that the primary purpose of Title VII was not to punish the defendant-employer, but to eliminate discriminatory practices in the future. Id. Kilgo is of little help to claimant's argument. The general rule acknowledged in Schreiber and Kilgo, that punitive or penal actions abate with the death of the wrongdoer, is not disputed. Only its application to this case is disputed.

In behalf of abatement, the attorney for claimant's estate in his supplementary brief argues that the survivability of this action is a question of federal common law, relying on NEC. That case was a qui tam action brought under the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq. NEC, 11 F.3d at 137. The government argued that

6

the claim of the qui tam plaintiff-relator, who died pending appeal, did not survive his death. While the court noted it was clear the FCA is remedial with respect to the government's recovery against a defendant-wrongdoer, that the statute redresses individual wrongs, rather than wrongs to the general public, and "is intended to compensate the government for damages suffered as a result of the defendant's action," id. at 137-38 (citation omitted), the question at issue was whether the FCA is remedial or penal with respect to the recovery of the qui tam relator. Id. at 137. The court held that a qui tam relator may also suffer harm, not just the government; therefore, the FCA's qui tam provisions are remedial, not penal, and would survive the death of the plaintiff-relator. Id. at 138. In addition, the court noted that the qui tam provisions of the FCA "provide incentive to government 'whistleblowers'", encouraging individuals with knowledge of government-related fraud to come forward, helping to relieve the government of expensive investigations and litigation. Id. at 139. The cited case is more helpful to the government than to the claimant's estate.

The estate of the claimant directs us to two district court cases which have determined that 18 U.S.C. § 1955(d), the gambling forfeiture statute, is penal in nature. See United States v. $47,409.00 in U.S. Currency, 810 F.Supp. 919 (N.D. Ohio 1993); United States v. Life Ins. Co. of Virginia, 647 F.Supp. 732 (W.D.N.C

1986). In the first case, the government alleged that the currency was subject to forfeiture under § 1955(d) as the money was used in an illegal gambling business. $47,409.00 in U.S. Currency, 810 F.Supp. at 919. The court held that it was self-evident that the civil forfeiture of gambling proceeds is a penalty as it is an integral part of the criminal statute. Id. at 923. The court's interpretation was that "the forfeiture provisions . . . are clearly intended to redress the public harm caused by organized crime rather than to redress individual wrongs inflicted upon organized crime's 'willing' gambling victims." Id. at 924. "There is no indication that the Government here seeks, intends or engages in the absurd function of returning the gambling profits to the luckless wagerers involved." Id. However, the losses of the bettors are of no concern to the government. It is the government which is looking out for its own losses caused by the illegal conduct.

In the second case, the district court could find no case which had already determined the nature of the gambling forfeiture statute. See Life Ins. Co. of Virginia, 647 F.Supp. at 741. The court then found it was a punitive and quasi-criminal statute. Id. We find those cases not to be persuasive. That the forfeiture provision is contained in the gambling prohibition statute of §1955 is not determinative. The penalty provided for illegal gambling in that section is a fine or imprisonment, but forfeiture provided for in a separate subsection serves a remedial purpose.

8

We find the answer in <u>United States v. Ursery</u>, 518 U.S. 267 (1996).  The Supreme Court stated that while forfeiture statutes may have "certain punitive aspects, [they] serve important nonpunitive goals." <u>Id.</u> at 290 (listing cases) (noting that civil forfeiture of property discourages landowners from using or allowing property to be used for illegal purposes or may abate a nuisance).  The Court reaffirmed its conclusion that "forfeiture . . . serves a deterrent purpose distinct from any punitive purpose." <u>Id.</u> at 292 (quoting <u>Bennis v. Michigan</u>, 516 U.S. 442, 452 (1996)).

The Court determined, "Civil forfeitures, in contrast to civil penalties, are designed to do more than simply compensate the Government." <u>Ursery</u>, 518 U.S. at 284.  Forfeitures "are designed primarily to confiscate property used in violation of the law, and to require disgorgement of the fruits of the illegal conduct." <u>Id.</u>  The Court noted it may be possible to place a value on the property forfeited, but "it is virtually impossible to quantify, even approximately, the nonpunitive purposes served by a particular civil forfeiture." <u>Id.</u>  Therefore, the amount of harm suffered by the government compared to the amount of the penalty is found to be inapplicable to civil forfeitures. <u>Id.</u>  We find the gambling forfeiture statute is remedial, not punitive, and does not abate upon the death of the property owner.

In the most recent case of <u>United States v. One Parcel of Real Estate at 10380 S.W. 28th Street, Miami, Florida</u>, 214 F.3d 1291 (11th Cir. 2000), this circuit

9

considered forfeiture of a home for drug violations. The husband had been convicted of the drug offense, not the wife. The wife of the offender unsuccessfully sought relief from the forfeiture and appealed. She died during the appeal and the husband took up the appeal in her behalf contesting the denial of a Fed. R. Civ. P. 60(b) motion. One Parcel of Real Estate, 214 F.3d at 1292-93. This court held the forfeiture order did not abate upon the wife's death and that the forfeiture did not violate the Eighth Amendment Excessive Fines Clause. Id. at 1295. Relying on Ursery in drug forfeiture circumstances, as we do in the gambling context, the court affirmed the forfeiture. Id.

One difference between the present case, however, and the One Parcel of Real Estate drug case is that the drug offense was a federal offense with no dependence on state law. In the present case, the gambling offenses are determined by state law. That distinction makes no difference in the outcome of this case, as the offenses are illegal under both federal and state law. See, e.g., Kilgo, 789 F.2d at 876 (finding that decedent's § 1983 claim for damages survives death whether based on state law or federal law).

As to the merits of the underlying case, the estate first argues that the taking was an "excessive fine." We have already addressed that issue. A civil forfeiture is not a fine, whether excessive or not. See Ursery, 518 U.S. at 284. The forfeiture is

10

part of the remedy in contrast to the imposition of incarceration or a fine imposed on the wrongdoer. See id. at 287.

Finally, the estate argues that it is entitled to damages for the time after the first forfeiture which was found to be illegal. This court's mandate was to determine if claimant was deprived of any damages in the form of rents received or other proceeds realized by the government during that period. See Land, Winston County, 163 F.3d at 1302. The district court's findings of fact are reversed only if found to be clearly erroneous. United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); Fed. R. Civ. P. 52(a). The district court's conclusions of law are reviewed de novo. United States v. One Single Family Residence, 894 F.2d 1511, 1513 (11th Cir. 1990). The district court found no rents or other proceeds were realized by the government during the period of the illegal seizure. The record supports these findings. The premises were designed only for cockfighting and the property was not readily adaptable for any other use. The government, of course, did not reopen the illegal gambling enterprise (even though it appears from the record that for many years it was profitable for the Woods). Therefore, only nominal damages were due to Mrs. Woods for the violation of the due process clause. See Carey v. Piphus, 435 U.S. 247, 266-67 (1978) (approving award of nominal damages of one dollar where procedural due process violation caused no actual injury). In addition, the sale of the property came

only after the government had lawfully forfeited the property. Those sale proceeds were not profits earned during the time of the illegal forfeiture. The government earned nothing from the property and owes nothing other than the nominal damages allowed by the district court.

AFFIRMED.