**UNITED STATES of America, ex rel Francis E. HARRINGTON, Plaintiff,**

v.

**SISTERS OF PROVIDENCE IN OREGON, an Oregon corporation, dba Providence Portland Medical Center; Emilie Gamelin Institute for Mental Health and Addictions Treatment Services, Defendants.**

**Civil No. 98–1587–JO.**

United States District Court, D. Oregon.

July 22, 2002.

Dana L. Sullivan, Ronald H. Hoevet, Hoevet Snyder & Boise, P.C. Portland, OR, for Plaintiff.

David B. Robbins, Bennett Bigelow & Leedom, P.S., Seattle, WA, Jeffrey J. Druckman, Druckman & Associates, P.C., Portland, OR, for Defendants.

### OPINION AND ORDER

ROBERT E. JONES, District Judge.

Relator Francis Harrington brought this *qui tam* action against defendants pursuant to the federal civil False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* The factual background of the claim is set forth in my opinion on defendants' earlier motion to dismiss the complaint under Fed. R.Civ.P. 9(b)(# 66), and will not be repeated here.

In late February 2002, defendants filed a second Rule 9(b) motion to dismiss, directed to relator's amended complaint. In early April 2002, while that motion was pending, defendants notified the court that relator had recently died. Relator's counsel then notified the court that he intended to file a motion to substitute the personal representative of relator's estate, once one was appointed.

Based on the change in circumstances, on April 19, 2002, the court entered a minute order mooting defendants' Rule 9(b) motion. Defendants then filed a motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) (# 80), arguing that relator's death extinguished his claim.

On July 2, 2002, relator's personal representative, M. Monica Harrington, moved to substitute herself as relator. By minute order dated July 16, 2002, I conditionally allowed the substitution, so that I might reach the merits of defendants' present motion to dismiss. For the reasons stated below, defendants' motion is granted and this action is dismissed.

### DISCUSSION

Defendants contend that relator's death extinguished his *qui tam* action, thereby requiring dismissal. Stated another way, defendants' motion raises the sole issue of whether a *qui tam* action brought pursuant to the FCA survives the relator's death.

The parties agree that in the absence of an expressed intent to the contrary, the survival of a federal cause of action is a question of federal common law. *See, e.g., U.S. v. NEC Corp.,* 11 F.3d 136, 137 (11th Cir.1993). Under the federal common law, "it is well-settled that remedial actions survive the death of the plaintiff, while penal actions do not." *NEC*

*Corp.,* 11 F.3d at 137 (*citing, inter alia, Schreiber v. Sharpless,* 110 U.S. 76, 80, 3 S.Ct. 423, 28 L.Ed. 65 (1884)). In general, an action is remedial if the recovery compensates an individual for specific harm suffered, and penal if the recovery imposes damages on the defendant for a general wrong to the public. *U.S. v. Land, Winston County,* 221 F.3d 1194, 1197 (11th Cir.2000).

Thus, the court's task is to determine whether the FCA is remedial or penal in nature. Before amendment in 1986, the FCA imposed double damages and civil penalties for each false claim, *U.S. ex rel. Satalich v. City of Los Angeles,* 160 F.Supp.2d 1092, 1099 (C.D.Cal.2001), damages that the Supreme Court considered to be remedial in nature. *Satalich,* 160 F.Supp.2d at 1099 (*citing, inter alia, United States v. Bornstein,* 423 U.S. 303, 315, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976)); *see also Vermont Agency of Nat. Resources v. U.S.,* 529 U.S. 765, 785, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). Consistent with that viewpoint and in light of the purposes the FCA serves, in *NEC Corp.,* the Eleventh Circuit held that an FCA *qui tam* action survives the death of the relator. 11 F.3d at 139.

In 1986, Congress amended the FCA. The amendments increased the liability imposed by the statute from double to treble damages, raised the civil penalty from $2,000 to "not less than $5,000 and not more than $10,000" per claim, and provided for attorney fees for successful claimants. *See* 31 U.S.C. §§ 3729(a), 3730(d). These amendments forced the courts to consider whether Congress changed the remedial nature of the statute and, more specifically, whether states and local governmental entities were "persons" capable of being sued under the FCA. In doing so, courts split on the issue. *Compare, e.g., U.S. ex rel. Garibaldi v. Orleans Parish School Bd.,* 46 F.Supp.2d 546, 558–

59 (E.D.La.1999)(states and municipalities are "persons" under the FCA), *judgment vacated* 244 F.3d 486 (5th Cir.2001); and *Graber v. City of New York,* 8 F.Supp.2d 343, 356 (S.D.N.Y.1998)(state and local government agencies are not "persons" under the FCA).

In 1998, the Second Circuit held that states are persons for purposes of the FCA, impliedly overruling *Graber, supra. See U.S. v. State of Vt. Agency of Natural Resources,* 162 F.3d 195, 207 (2nd Cir. 1998). So matters stood until May 2000, when the Supreme Court reversed the Second Circuit, ruling that states cannot be sued under the FCA. *Vermont Agency, supra,* 529 U.S. at 788, 120 S.Ct. 1858. As pertinent to the issue here, the Supreme Court reasoned that while damages under the earlier version of the FCA "were remedial rather than punitive,"

> the current version of the FCA imposes damages that are *essentially punitive in nature,* which would be inconsistent with state *qui tam* liability in light of the presumption against imposition of punitive damages on governmental entities.

*Vermont Agency,* 529 U.S. at 785, 120 S.Ct. 1858 (emphasis added; citations omitted).

A majority of post-*Vermont Agency* cases similarly conclude that the FCA now imposes damages that are essentially punitive in nature. *See, e.g., U.S. ex rel. Dunleavy v. County of Delaware,* 279 F.3d 219, 223 (3rd Cir.2002)("the FCA's treble damages provision is punitive"); *U.S. ex rel. Chandler v. Cook County, Ill.,* 277 F.3d 969, 977 (7th Cir.2002)("damages under the FCA are now considered to be punitive"); *U.S. ex rel. Garibaldi v. Orleans Parish School Bd.,* 244 F.3d 486, 491 (5th Cir. 2001)(FCA imposes punitive damages); *see also U.S. ex rel. Honeywell, Inc. v. San Francisco Housing Authority,* 2001 WL

793300 (N.D.Cal.2001)("*[Vermont Agency]* * * * explicitly resolved the dispute over whether the current version of the FCA—which mandates treble damages—is compensatory or punitive, finding it to be the latter").

In *U.S. v. Mackby*, 261 F.3d 821 (9th Cir.2001), a *qui tam* action, the Ninth Circuit recognized that the FCA's purpose is at least in part punitive. 261 F.3d at 830. The court noted that the language of the FCA does not specify whether the penalty of $5,000 to $10,000 per claim is meant to be punitive or remedial, but that "the sanction clearly has a punitive purpose * * *." 261 F.3d at 830. The court further noted the Supreme Court's ruling that treble damages under the FCA, "at least in combination with the Act's civil penalty provision, are 'essentially punitive in nature,' for the purposes of determining state liability in a qui tam suit." 261 F.3d at 831 (*quoting Vermont Agency*, 529 U.S. at 784–86, 120 S.Ct. 1858). Because the civil sanctions are "at least in part * * * punishment" and the treble damages provision "is not solely remedial," the court held that both were subject to an Excessive Fines Clause analysis under the Eight Amendment. 221 F.3d at 830, 831.

That courts consider the FCA damages and penalty provisions to be punitive in nature, at least with respect to the *qui tam* defendant or for purposes of state *qui tam* liability, does not, however, fully resolve the issue before this court. As the Eleventh Circuit acknowledged in *NEC Corp., supra*, "a statute can be remedial as to one party, yet penal as to another." 11 F.3d at 137 n. 1 (citation omitted); *see also U.S. v. Land, Winston County, supra*, 221 F.3d at 1197–98.

*NEC Corp.*, which predates *Vermont Agency*, grappled with the characterization of the FCA's *qui tam* provisions with respect to the relator's claim, as opposed to the defendant's liability. In refusing to characterize the provisions as penal, the

court reasoned that the FCA *qui tam* provisions

> provide incentive to government "whistleblowers" and compensate such individuals for their time and trouble.

> * * * One of the FCA's primary purposes is to encourage individuals knowing of government-related fraud to come forward with that information. * * * By minimizing the obstacles faced by *qui tam* plaintiffs, we believe that this type of government "whistleblowing" will be further encouraged.

11 F.3d at 139 (citations omitted).

The Eleventh Circuit in *NEC Corp.* apparently based its decision, at least in part, on a belief that the *qui tam* relator suffers substantial personal harm, which the *qui tam* provisions are intended to redress:

> We believe that a *qui tam* relator suffers substantial harm and the *qui tam* provisions of the FCA are intended to remedy that harm. First, a *qui tam* relator can suffer severe emotional strain due to the discovery of his unwilling involvement in fraudulent activity. Moreover, the actual or potential ramifications on a relator's employment can be substantial. As several courts have recognized, *qui tam* relators face the Hobson's choice of "keeping silent about the fraud, and suffering potential liability (and guilty consciences), or reporting the fraud and suffering repercussions, some as extreme as dismissal."

*NEC Corp.*, 11 F.3d at 138.

Assuming that the *NEC Corp.* analysis survives *Vermont Agency* and that in certain special cases, the Ninth Circuit might agree with the Eleventh Circuit that the *qui tam* provisions of the FCA may properly be characterized as remedial, the claim in the present case contains no allegations of personal or substantial harm to the relator, only harm to the public inter-

est.[1] *See U.S. v. Northrop Corp.*, 59 F.3d 953, 968 (9th Cir.1995)("the private right of recovery created by the *qui tam* provisions of the FCA exists not to compensate the *qui tam* relator, but the *United States.* * * * [Q] *ui tam* actions exist *only* to vindicate the public interest" (emphasis in original; citation and footnote omitted)).

■ Consequently, I conclude that relator's claim does not survive his death. This action must, therefore, be dismissed.

## CONCLUSION

Defendants' motion to dismiss (# 80) is GRANTED. Any other pending motions are denied as moot, and this action is dismissed.

1. Given that this case has been pending since 1998, if relator had suffered any personal and substantial harm like that described in *NEC Corp.*, he undoubtedly would have included allegations of such harm in the amended complaint, which he did not do.