UNITED STATES of America ex rel. ESTATE OF BOTNICK, Plaintiff,

v.

CATHEDRAL HEALTHCARE SYSTEM, INC., Cathedral Health Services, Inc., Prime Mark Corp., Inc., Frank L. Fumai, George A. Popko, Jose Gomez–Rivera, M.D., Dominick Calgi, Ceu Cirne Neves, and Olympia Esquardero, Defendants.

Civil Action No. 97–CV–3073 (DMC).

United States District Court, D. New Jersey.

Jan. 12, 2005.

**OPINION**

CAVANAUGH, District Judge.

This matter comes before the Court upon application by the estate of *qui tam* Relator Victor Botnick ("Botnick") for a determination whether his claims to a percentage of the recovery by the Government under the False Claims Act, 31 U.S.C. §§ 3729–3733 ("FCA"), survive his death. After carefully considering the submissions of the parties and based upon the following, it is the finding of this Court that Botnick's interest in the settlement survives his death. The Court further finds that Botnick's claim for reasonable attorney's fees also survives.

**I. *BACKGROUND***

Botnick filed a *qui tam* complaint in the United States District Court for the District of New Jersey on June 12, 1997. (Rel.'s Br. at 2.) The Government subsequently intervened in the matter pursuant to 31 U.S.C. § 3730(c)(1) on October 29, 2001. (Def.'s Br. at 2.) While the matter was still proceeding, on October 16, 2002, Botnick died. (Rel.'s Br. at 2.) Botnick's estate was substituted as a party in the action on January 31, 2003. (*Id.*) The Government reached a settlement with at least some of the above-captioned Defendants in early 2003. (*Id.*) Botnick's estate now seeks a percentage of the settlement, specifically 17%, as well as attorney's fees as provided for under the FCA. (Rel.'s Br. at 3.) Defendant Jose Gomez–Rivera ("Defendant") contends that Botnick's interest in the settlement under the FCA did not survive his death. (Def's Br. at 2.) Due to the novelty of the issue before it, the Court requested that both parties brief the matter in January 2004.

**II. *DISCUSSION***

**A. *The False Claims Act***

The FCA imposes liability upon any individual who submits a "false or fraudulent claim for payment" to an officer or employee of the U.S. Government. 31 U.S.C. § 3729(a). A unique characteristic of the FCA is that it may be enforced by a private individual acting on the Government's behalf, known as a relator. 31 U.S.C. § 3730(b). Once the relator has filed a suit under the FCA, the Government may decide to intervene in the action and control the suit. 31 U.S.C. § 3730(c). Any eventual recovery belongs to the Government regardless of whether it intervenes in the suit. *Id.* The FCA also provides that, in the event the Government has intervened, between 15–25% of the recovery and reasonable attorney's fees should be awarded to the relator, as an incentive to potential plaintiffs/relators to come forward with a suit. 31 U.S.C. § 3730(d).

**B. *Survivability of Botnick's Claims***

Neither party nor the Court itself was able to locate any Supreme Court or Third Circuit precedent which directly resolves the instant question—whether a relator's interest in an FCA claim survives his

death. Both parties agree that, in the absence of a specific statute addressing the issue, the survivability of a federal claim is governed by federal common law. *See Ex parte Schreiber*, 110 U.S. 76, 3 S.Ct. 423, 28 L.Ed. 65 (1884). Survivability turns on whether the action is penal, such that it terminates upon the death of the plaintiff, or remedial, which survives the plaintiff's death. *Id.* The language of a statute itself and its legislative history may be instructive in determining whether the statute is remedial or penal. *See U.S. ex rel. Semtner v. Medical Consultants, Inc.*, 170 F.R.D. 490, 494 (W.D.Okl.1997).

### 1. Treble Damages Provision of the FCA

Defendant contends that the Supreme Court's recent ruling that the treble damages provided for in the current version of the FCA are "essentially punitive in nature," *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 784, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000), is dispositive of the issue of survivability, since Plaintiff has conceded a punitive action would not survive Botnick's death. (Def.'s Br. at 6.) Indeed, in 2002, the Third Circuit acknowledged that, in the wake of *Stevens*, the treble damages provision of the FCA is punitive. *U.S. ex rel. Dunleavy v. County of Delaware*, 279 F.3d 219, 223 (2002) (*vacated on other grounds U.S. ex rel. Dunleavy v. County of Delaware*, 538 U.S. 918, 123 S.Ct. 1619, 155 L.Ed.2d 308 (2003)). That same year, in *U.S. ex rel. Harrington v. Sisters of Providence in Oregon*, 209 F.Supp.2d 1085, the District Court for the District of Oregon considered the specific issue of survivability under *Stevens*. The Oregon District Court recognized that the *Stevens* decision explicitly resolved that the FCA in its current form is punitive rather than remedial, and accordingly a relator's claim does not survive his death. *Harrington*, 209 F.Supp.2d at 1088–1089.

■ On the other hand, Botnick's estate argues that the latest Supreme Court decision regarding the FCA, *Cook County, Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 123 S.Ct. 1239, 155 L.Ed.2d 247 (2003), governs this case. The *Chandler* Court backed away from the blanket ruling in *Stevens* that the FCA was solely penal in nature and instead held that, "while the tipping point between pay-back and punishment defies general formulation . . . the facts about the FCA show that the damages multiplier has compensatory traits along with the punitive," 538 U.S. at 130, 123 S.Ct. 1239. The Court went on to note that "the most obvious indication that the treble damages ceiling has a remedial place under [the FCA] is its *qui tam* feature with its possibility of diverting as much as 30 percent of the Government's recovery to a private relator who began the action." *Id.* at 131, 123 S.Ct. 1239. As the Supreme Court specifically cited the provision for a relator's recovery of a percentage of any FCA award as an indication of the remedial aspects of the statute, this Court agrees with Botnick's estate that it would follow that a relator's recovery constitutes a remedial action rather than a penal one.

In consideration of this most recent interpretation of the FCA, as well as legislative history indicating a strong intent on the part of Congress to create incentives for relators such as Botnick to come forward, *see Chandler*, 538 U.S. at 133, 123 S.Ct. 1239 ("because Congress was concerned about pervasive fraud . . . [it] enhanced the incentives for relators to bring suit"), the Court must agree that the action is remedial and survives Botnick's death. Accordingly, it is the finding of this Court that Botnick's estate is entitled to a percentage of the settlement between the Government and Defendants.

## 2. Statutory Attorney's Fees

 A separate issue remains of whether Botnick's claim for attorney's fees is remedial or penal in nature. The general rule in the United States "disfavors the allowance of attorneys' fees in the absence of statutory or contractual authorization." *Hall v. Cole,* 412 U.S. 1, 4, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). Defendant argues that because the FCA provides for an award of reasonable attorney's fees, it bears no relation to the actual amount of attorney's fees paid by Botnick and as such cannot be remedial. (Def.'s Br. at 8.) However, the Court is not convinced by this rationale.

 Though Defendant is correct in its assertion that fee-shifting may be punitive in certain instances, the intent of the FCA is clearly to encourage a relator to come forward with information regarding false claims submitted to the Government. *Chandler,* 538 U.S. at 131, 123 S.Ct. 1239 ("[treble damages in the FCA] may well serve not to punish, but to quicken the self-interest of some private plaintiff who can spot violations and start litigating to compensate the Government, while benefiting himself as well"). Such encouragement takes form in the FCA as monetary compensation to a relator for his expenditures in bringing a *qui tam* case. 31 U.S.C. § 3730(d)(1). The award of attorney's fees here is not to punish a defendant, but instead is simply a device fashioned by Congress to reimburse a relator for initiating an action on the Government's behalf. Any other interpretation of the award would negate Congress' clear intention to create incentives for those with knowledge of fraud to disclose it.

Therefore, the Court finds that the statutory provision for relator's attorney's fees in the FCA is remedial in nature. Accordingly, Botnick's claim for reimbursement of reasonable attorney's fees survives his death.

## CONCLUSION

For the reasons stated, it is the finding of this Court that Botnick's interest in the settlement survives his death. The Court further finds that Botnick's claim for reasonable attorney's fees survives his death and is hereby granted. An appropriate Order accompanies this Opinion.